THE STATE OF IOWA v. MORAN.

When the General Assembly passed an act, which was approved January 19th, 1858, repealing so much of the provisions of a former statute as required a term of the district court to be held at Keokuk, in Lee county, on the second Monday in February, 1858, and providing that all actions, indictments, &c., should be returnable to, and valid at, the September term of said court; and when the Legislature subsequently passed another act, which was approved on the 23d of March, 1858, which provided that it is made the duty of the judge of the district court to hold a special term of said court in Keokuk, in Lee county, at such time as he may deem expedient between the first day of April and the first day of July, 1858, for the trial of criminals, and for that purpose alone; and when, in pursuance of the latter statute, a special term of the district court was held in May, 1858; *Held,* That a party indicted for a criminal offense, at the September term, 1857, of the said district court, was subject to trial at the said special term; and the act of January 19th, 1858 did not continue the cause until the September term, 1858, of the said district court.

Where exceptions were not taken at the time, to instructions that were given or refused, the giving, or the refusal to give the instructions, cannot be assigned for error in, nor considered by, the appellate court.

Upon the trial of a party charged with murder, it is the duty of the jury, if they find him guilty, to inquire and determine by their verdict whether he is guilty of murder of the first or second degree. The law requires that the *jury* shall find specifically the degree of guilty.

Where on the trial of a party charged with murder in the first degree, the jury rendered a verdict, finding the defendant guilty as charged in the indictment; and where the defendant filed a motion to set aside the verdict and for a new trial, for the reason, among others, because the verdict did not specify the degree of guilt, which motion was overruled; *Held,* That the verdict was fatally defective, and that the court erred in overruling the motion.

*Appeal from the Lee District Court.*

TUESDAY, DECEMBER 7.

INDICTMENT FOR MURDER. The charge is, that the said defendant did, on, &c., at, &c., " with force and arms, wilfully, deliberately, and with malice aforethought, kill and murder one Mrs. Moran, whose christian name is to the jurors unknown, with a knife, commonly known as a dirk-knife, by stabbing the said Mrs. Moran aforesaid, in her body, causing a great and mortal wound, from which said mortal wound, inflicted by the knife aforesaid, and by the said Patrick Moran aforesaid, the said Mrs. Moran aforesaid did die on the said day the stabbing took place." This indictment was found and presented at the September term, 1857, of the Lee district court, at Keokuk. A special term of that court was held in May, 1858, at which time defendant moved that the said cause be continued to the next term, in September. This motion was overruled, and defendant put upon his trial. He was convicted, and sentenced to be hung. To reverse that judgment, he prosecutes this appeal. For the error relied upon, see the opinion of the court.

*Rankin, Miller & Enster,* for the appellant.

*C. Ben Darvin,* [for the Attorney General], for the State.

WRIGHT, C. J.—It is first urged that the court below erred in refusing to continue the cause. This question involves the consideration of chapters 1 and 134, of the laws of 1858, and is substantially the same as that determined in *The State* v. *Smith, post,* 244. In that case, the motion

was to strike the cause from the docket, for the same reason that defendant, in this, moved for a continuance. It was there held, that the cause was properly for trial at the special term, and to that opinion we still adhere. Following the ruling there made, we conclude that the court did not err in refusing to continue the cause.

It is next objected, that the court erred in giving certain instructions, and in refusing some, and modifying others, asked by defendant. To the action of the court in this respect, however, there was no exception at the time. We have too frequently held, that we will not review instructions given and refused, where no exceptions were taken, to now consider these. *Rawlins* v. *Tucker*, 3 Iowa, 213; *Talty* v. *Lusk*, 4 Ib., 469; *McKell* v. *Wright, Evans & Co.*, Ib., 504; *Parker* v. *Pierce*, 4 G. Greene, 452; *Brewington* v. *Patton et al*, 1 Iowa, 121; *Claussen* v. *Lafranz*, 1 Ib., 226; *Ewing* v. *Scott*, 2 Ib., 447; *Cutter* v. *Funning*, 2 Ib., 580. We may add that we have less reluctance in applying this rule, (claimed to be technical), to the case before us because, upon the third and last point presented by counsel for the prisoner, we conclude that the cause must be reversed. To this point we now come.

The verdict of the jury was as follows: "We, the jury, find the defendant guilty as charged in the indictment." The prisoner's counsel thereupon moved to set aside the verdict, and grant a new trial, for the reason, among others, that the said verdict "does not say, as the law requires, whether the defendant was guilty of murder in the *first* or *second* degree." This motion was overruled, and the punishment of death was ordered to be executed.

Our Code distinguishes between murder of the *first*, and murder of the *second*, degree.

"All murder which is perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate, and premeditated killing, or which is committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, mayhem, or burglary, is murder of the first degree, and shall be punished with death.

" Whoever commits murder otherwise than is set forth in the preceding section, is guilty of murder in the second degree; and shall be punished by imprisonment for life, or for a term of not less than ten years," section 2569–70.

" Upon the trial of an indictment for murder, the jury, if they find the defendant guilty, must inquire, *and by their verdict ascertain*, whether he be guilty of murder in the first or second degree; but if such defendant be convicted upon his own confession, in open court, the court must proceed, by the examination of witnesses, to determine the degree of murder, and award sentence accordingly." Section 2571.

We think that the jury cannot be said to have made this inquiry, nor to have ascertained, by their verdict, the degree of defendant's guilt. This, it was their province and duty to do, and the court had no right to assume, from the verdict rendered, that they intended to find the prisoner guilty of one, rather than the other offense.

The crime of murder, as known and recognized at common law, is briefly defined by section 2568 of the Code. The two next sections were designed to separate its degrees of guilt. Upon the trial of a prisoner charged with this crime, it is made the imperative duty of the jury, if they find him guilty, to inquire, and by their verdict ascertain, whether he is guilty of murder of the first, or second degree. They are required, by law, to *ascertain* the degree of his guilt. When they report, he is guilty as charged in the indictment, we cannot regard that they have ascertained and reported the degree of his guilt, within the contemplation of the law. If the verdict, in this case, would be good, then why not good, if simply " guilty ?" Does it amount to anything more in legal effect ? It seems to us not, and yet such a verdict would not, certainly, be so far a compliance with the requirement of the Code, as to justify a conviction for murder in the first degree. If it would, then the object and purpose of the statute would be defeated. The statute is penal, and should receive a strict construction. Prior to its enactment, all murder in

this state, was punished with death. As, however, in the language of the Pennsylvania statute of 1794, "it was deemed unjust to involve offenses differing so greatly in degree, in the same punishment"—the two degrees were recognized, and an additional guarantee in favor of human life provided, in requiring that the jury should inquire, investigate, direct their attention to the degree of guilt, and ascertain the same by their verdict. The construction given accords, therefore, as we think, with the intention and policy of the law, as well as its plain language.

It is said, however, that the indictment charges the crime of murder in the first degree, and that when the jury, by their verdict, found defendant " guilty as charged in the indictment," they did, in legal effect, ascertain that he was guilty in the degree charged. This argument, however, leaves it to the court to deduce the intention of the jury from a verdict, general in its language, whereas the law requires, that the *jury* shall find specifically the *fact,* whether guilt is of the first or second degree. When jurors find by their verdict that a prisoner is " guilty," or " guilty as charged in the indictment," it is not assuming too much to say that, as a general thing, they have simply found him guilty of a criminal homicide, without reference to the degrees of his guilt. And to say that upon such a verdict, the court might properly conclude that they intended the highest offense, would be to presume against, instead of in favor of, human life.

The construction above given is not only in accordance with the language and policy of the statute, but is sustained by the authorities. Without referring to them in detail, we cite the following, made upon statutes almost identical in language with our Code. *Dick* v. *The State,* 3 Ohio S. 89; *Parks* v. *The State,* 3 Ib., 101; *State* v. *Dowd,* 19 Conn., 388 ; *Thomas et al* v. *The State,* 5 How. (Miss.), 20. The following cases, cited by counsel, we have not been able to see, and hence cannot speak of their weight. *McGee* v. *The State,* 8 Mo., 495; *Upton* v. *The State,* 20 Ib., 397 ; *Cassia* v. *The State,* 16 Ala., 781; *Johnson* v. *The State,*

17 Ib., 681.  Some cases in Pennsylvania are referred to, as holding a different doctrine.  We have had access to but two of those relied upon.  The case of *The Commonwealth* v. *Searle*, 2 Binney, 332, was for counterfeiting, and we can find nothing in it bearing, even remotely, upon the question at bar.  In *The Commonwealth* v. *Earle*, 1 Whart., 525, the charge was murder, by giving poison to the deceased.  In the opinion, this language is used : " all murder, perpetrated by means of poison, being equally of the first degree, there is neither necessity nor room for discrimination by the verdict, where the degree of the offense charged is fixed in the indictment.  The provision for the ascertainment of the degree by verdict, was intended for cases in which the jury might be at liberty to find the prisoner guilty in the second degree ; but, as in cases of murder by poisoning, the prisoner is guilty, if at all, in the first degree ; and, as a verdict of guilty in another degree would not be received, the law will not require, though it might endure, the performance of an act so nugatory as an attempt at classification, where there is no difference, or the marking, by the verdict, of a measure of guilt preestablished by the law itself."

Without questioning the correctness of this reasoning, we cite *Contra*, 19 Conn., 388, and add that, as in the case at bar, the jury were at liberty to find the prisoner guilty of murder in the second degree, the provision for the ascertainment of the degree by the verdict, even under this Pennsylvania case, applies.  The case most relied upon, however, is that of *White* v. *Commonwealth*, 6 Binney, 182.  This is not before us.  In 1 Whart., 325, it is said that the rule contended for by the state " was asserted, though not decided," in White's case.  Caldwell J., in *Parks* v. *The State*, 3 Ohio, 101, in referring to the case in 6 Binney, says, that the question did not arise, and what was said was a mere *dictum*.  If this be so, the Pennsylvania cases would not seem to weigh very heavily against those decided in the other states upon this question.

VoL VII.    31

We· conclude, therefore, as well from authority as the express language of the statute, that this verdict was fa-' tally defective, and that no judgment could properly be entered upon it.

Judgment reversed, and a trial *de novo* awarded.