## STATE OF IOWA V. PETER S. RUDD, Appellant.

**Assault to Rape:** JURY QUESTION. On trial for assault with intent to rape, prosecutrix testified that defendant seized her, in a hog house, and tore her clothes; that his trousers were unbuttoned, and that she made a strong resistance. There was also evidence of complaints to her husband, and others. *Held*, to sustain a verdict of guilty.

**Evidence:** REBUTTAL. Where defendant's wife, on cross-examination, denied that in a conversation with the prosecutrix, in his presence, she (defendant's wife) said she and defendant had talked the matter over, it was not error to permit the prosecutrix to testify, in rebuttal, that defendant's wife made such statement.

HARMLESS ERROR. Where a witness for the state, on 'cross-examination, denies having made a certain statement, out of court, and a witness for the defendant afterward testifies that such witness made such statement, it is not prejudicial error to allow the state's witness to again deny it.

INCOMPETENCY. A witness cannot testify as to what he understood by a statement of a person, out of court, to which such witness has testified.

INSTRUCTIONS SUSTAINED. Where prosecutrix testified that defendant took hold of her violently, and held her, despite her resistance, so as to inflict injury on her person, it was not error to charge that if the jury failed to find that defendant assaulted prosecutrix

with intent to rape, but found that he had taken hold of her as she alleged, they should find him guilty of assault.

**Practice:** FINDING OF GUILTY. The record showed a trial and a verdict of guilty; that defendant's motion to set aside the verdict and for a new trial, was overruled; that afterwards defendant, being present, was informed of the nature of the indictment, his plea, and the verdict of the jury; and that, no legal cause being shown against the same, it was ordered and adjudged that defendant be imprisoned, etc. *Held*, that the judgment was not open to the objection, that it was insufficient, because there was no finding of guilty by the court. *State v. Cook*, 92 Iowa, 483 (61 N. W. Rep. 185), *followed*.

*Appeal from Worth District Court.*—HON. JOHN C. SHER-WIN, Judge.

TUESDAY, APRIL 7, 1896.

THE defendant was convicted on an indictment charging him with assault on Josephine Style, a female, with intent to commit a rape, on the fifteenth day of March, 1894. His motion for a new trial was overruled, and judgment entered against him, from which he appeals.—*Affirmed*.

*Cliggitt & Rule* and *W. H. Barnes* for appellant.

*Milton Remley, Jesse A. Miller, Ed. Collin, Frank Forbes, W. L. Eaton,* and *J. R. Smith* for the state.

GIVEN, J.—I. Appellant's first contention is that there is no proper judgment against him, for that "there is no finding by the court of guilty." The record shows a trial, verdict of "guilty of assault with intent to commit a rape upon Josephine Style, as charged"; that defendant's motion to set aside the verdict, and for a new trial, was heard and overruled, and that afterwards, on the same day, the cause came on for judgment; that the defendant, being present, was informed by the court of the nature

of the indictment, his plea, and the verdict of the jury thereon, "and, no legal cause being shown against the same, it is therefore ordered and adjudged by the court that the defendant, Peter S. Rudd, be imprisoned in the penitentiary at Anamosa, at hard labor, for the term of one year." This judgment, so far as any finding of guilt by the court is concerned, is identical with that in *State v. Cook*, 92 Iowa, 483 (61 N. W. Rep. 185). which was held, by this court, to be sufficient.

II. Appellant assigns as error certain rulings of the court on the taking of the testimony. After the defense rested, the state called J. R. Smith, whose name was not on the indictment as a witness, and as to whom no notice had been given. Mr. Smith, having testified that he had a conversation with the defendant prior to the preliminary examination, was asked this question: "State whether or not in that conversation, at your office, Mr. Rudd said to you, in words or in substance, that he was there at Mr. Style's on the afternoon of the fifteenth of last March, being the day of the assault." The defendant objected on the ground that it was incompetent, and not proper rebuttal. The objection was overruled, and the witness answered that "he did." He was asked "whether or not, in that conversation, he stated to you that he saw Mrs. Style there on that afternoon." To this the defendant objected on the ground that it was incompetent, and calling for an admission of the defendant which was competent evidence in chief on the part of the state, and not proper in rebuttal, which objection was sustained. Appellant's complaint is that this was an effort upon the part of the state to introduce in rebuttal an admission which was competent in chief, and to thereby avail itself of the testimony of the witness of whom the defense had no notice. The defendant had testified that he was not at the place mentioned on the afternoon of the fifteenth, and had introduced

evidence tending to establish an alibi. We are inclined to think that the conversation inquired about, was admissible in rebuttal, but whether it was or not, we need not determine, as it will be observed that under the rulings, the witness did not state what the conversation was. Mrs. Style stated on cross-examination that she did not tell Mrs. Culbertson that she got her sickness from pumping. Mrs. Culbertson testified, on behalf of the defendant, that she did so state; and Mrs. Style was permitted, over defendant's objection, when called in rebuttal, to again testifiy that she did not so state. While it may have been unnecessary to have the testimony of Mrs. Style repeated, we fail to discern wherein it could have been in the least prejudicial to the appellant. Appellant complains that Mrs. Schrader was permitted to state that Mrs. Style told her about being assaulted by some one on the fifteenth day of March, in the hog house, on her premises. The record fails to show that any objection was made, either to the question or answer. The wife of the defendant testified that when Mrs. Style said to the defendant, "something about, you know, what you had done to me in the hog house, why, I heard he said you are sick." She was then asked, "What did you understand by that?" to which the state's objection was sustained, as incompetent and immaterial. We think it was for the jury, not the witness, to determine the sense in which the language was used. Mrs. Style was allowed to testify in rebuttal, that in a conversation with defendant's wife, and in his presence, defendant's wife stated that they had talked about the matter before they came to see Mrs. Style. This was in rebuttal of the testimony of Mrs. Rudd, on cross-examination, in which she had denied so saying to Mrs. Style. Surely,

the state was not concluded by Mrs. Rudd's statement, and had a right to contradict it in rebuttal.

III. Appellant contends that the fifth instruction is not sufficiently specific, for that it does not define an assault, or assault and battery. The instruction is that: "If you fail to find that defendant assaulted Josephine Style, with intent to commit a rape, but do find that he, at the time and place, took hold of her as she alleges, then you should find him guilty of assault." Josephine Style alleged, in her testimony, that he took hold of her violently, and held her, despite her resistance, so as to inflict injury upon her person. If the jury found this to be true, then, clearly, the defendant was guilty of an assault, and it would have been difficult for the court to make it plainer to the jury than in this instruction. It is contended that in the sixth instruction the court assumes, as a fact, that the defendant had a struggle with the prosecutrix. The instruction, taken alone, will not bear such a construction, and surely not, when taken in connection with other instructions given. Complaint is made of the refusal to give the seventh and ninth instructions asked by the defendant, for that the instructions given do not fully cover the ground. We think otherwise. We discover no error in the giving, or refusing of, instructions.

IV. Appellant further contends that the verdict is contrary to the evidence, and that there is no proper or sufficient corroboration of the prosecutrix to support the verdict. We will not set out nor discuss the evidence upon these questions. It is sufficient to say that there is some corroboration of the prosecutrix, tending to connect the defendant with the commission of the offense charged, and that the question of the sufficiency of the corroboration, as well as of the evidence, was properly submitted to the jury, and, under

the record, their verdict should not be disturbed on either of these grounds. The court gave an instruction as follows: "You are instructed that, in order to find the defendant guilty of the offense of assault, with intent to commit rape, you must find from the evidence, and be satisfied from the evidence beyond a reasonable doubt, not only that he made an assault on the prosecutrix, according to the meaning and definition of 'assault,' as given to you in other instructions, but you must be further satisfied, beyond a reasonable doubt, that in making such assault (if you find, beyond a reasonable doubt, that he made an assault) he had in his mind the particular and specific intent to accomplish the act of sexual intercourse upon her, even against her will, and against the utmost resistance the prosecutrix could make. For a mere assault, made with the intention of procuring her consent to the act of intercourse, or under the belief that she would yield to solicitation, and not intending to accomplish the act of intercourse against her resistance, you cannot convict him of the offense of assault with intent to commit rape." Appellant contends that the evidence does not show, beyond a reasonable doubt, the intent charged, and therefore, the verdict is contrary to the law as given by the court, and to the evidence. These parties were both married, and they and their families had been neighbors and friends for several years. According to the testimony of the prosecutrix, the offense was committed in a hog house at her home, on the afternoon of March 15, 1894. The hog house was about forty feet long from east to west, with a door in each end, an alley three to four feet wide through the center, and pens on each side. The prosecutrix was in the alley, watering the hogs. As to the character of the assault, she testifies as follows: "He came to the hog house; asked me if my husband was at home, I told

him no; that he was in Carpenter, cleaning flax. Then he passed inside the hog house, in where I was; looked at the pigs; says, 'Is that all the fat hogs you got?' I says, 'Yes.' I turned around, went to the door, got another pail of water out of the swill cart, and turned around; was going to give that to the pigs. Just as I leaned over to water them in the trough, he grabbed me around the waist. We went along. The pail,—I had it in my hand,—that was turned on the floor. Don't know how long the hog house is. The alley was,— think it is forty feet. When he grabbed me I was pretty near in middle of hog house. Wasn't to the door. I was to the second bin from the door. There are bins on both right and left sides of alley, and studding, or posts, running up to the roof from the floor along each side. Can't remember if he said anything when he grabbed hold of me. I got so excited. I tried to get away. I took hold around the joist running across. Put my hands up and grabbed hold of it. He still kept hold of me. He tore me loose from there, and carried me a little further down. Carried me around my stomach, here, and had hold of my clothes. Carried me so to the next studding. I got hold of another studding. He kept on pulling on my chest, here, trying to get me to let loose, but I didn't let loose of that. He tore my clothes,—my dress and underskirt. Had on a red and black calico dress, and a half woolen, half cotton skirt. He tore the dress up here in two places in front. I told him to let go of me. He didn't make any answer that I can remember. I held for all my might, and hollered for help. When I hollered for help, he let go. Then he went towards the door, went to the front door. Then he turned around and came back. He did not take hold of me again. When he turned around and came back I noticed his pants were unbuttoned. Then he asked me if I wouldn't say good-bye. I told him, 'No, sir,'

I told him, if I got to the door, I was going to hit him. Had no further talk then. Guess he went away then." The evidence shows that up to that time the prosecutrix was in good health, and that thereafter she suffered from female derangements, requiring medical treatment, such as might result from the kind of assault that she states was made upon her. The evidence also shows that she complained to her husband and to others, at the first opportunity, of the conduct of the defendant, and that the defendant and his wife came to her home to see her, and that the occurrence was the subject of their conversation. There are other facts appearing, which tend to corroborate the prosecutrix, not only as to the fact that an assault was made, but also as to the character of that assault. We think the jury was warranted in finding as it did.—AFFIRMED.