## STATE OF IOWA v. JAMES BURNS, Appellant.

**Murder:** CONTINUANCE. On a prosecution for murder, a motion for continuance based on the absence of a witness, where more than two months had elapsed since the granting of a continuance for the same reason, during which time no knowledge of the witness had been obtained and there was no showing that he could ever be produced, was properly overruled.

**Murder in the first degree:** INSTRUCTION. Under the evidence in the case, an instruction that where murder is accomplished by means of poison, the law implies from the nature of the act that it was done intentionally, willfully, deliberately, premeditately, and with malice aforethought, and declares it to be murder in the first degree, and that the jury was not called upon to consider murder in the second degree, or manslaughter, but must either convict or acquit defendant of murder in the first degree, was correct.

**Evidence:** CONCLUSION. The statement of a conclusion is not prejudicial where the evidence shows the witness to have been correct.

**Evidence:** STATEMENTS OF CO-DEFENDANTS. The statements of defendant's co-defendants, made in his presence and in a conversation in which he took part, are competent.

*Appeal from Polk District Court.*— HON. JOSIAH GIVEN, Judge.

THURSDAY, MAY 12, 1904.

THE defendant was convicted of the crime of murder in the first degree. There was a judgment on the verdict, and he appeals.— *Affirmed.*

*Spurrier, Forbes & Mills,* for appellant.

*Chas. W. Mullan,* Attorney General, *Lawrence De Graff,* Assistant Attorney General, *Jesse A. Miller,* County Attorney, and *Robert O. Brennan,* Assistant County Attorney, for the State.

SHERWIN, J.— The defendant, James Burns, John Ba-Tiese, Carrie BaTiese and George Beveridge were jointly indicted for the murder of Jerry Corcoran on the 20th day of December, 1902. John and Carrie BaTiese were husband and wife, living at that time in East Des Moines. The defendant, Burns, was also a resident of Des Moines, rooming in the BaTiese house, which was of questionable character. George Beveridge and the deceased, Jerry Corcoran, were laborers engaged in railroad work north of Des Moines a few miles. There was no acquaintance between them, but both came to Des Moines on the same car in the forenoon of the 20th day of December. There was also evidence tending to show that the two were together in a saloon between three and four o'clock in the afternoon of that day. About six o'clock in the evening the defendant, Burns, and Beveridge met on the street near the BaTiese house. Corcoran came along, was addressed by the defendant, Burns, and after a little talk Burns suggested that the three go to the BaTiese house and drink beer. They all went to the house, and had some beer as suggested. After they had taken some, the defendant, Burns, asked Mrs. BaTiese for morphine, and, upon being told that she had none, he went out, and soon thereafter returned with a bottle which he stated contained the drug. He opened the bottle, took some of its contents himself, and gave some to Beveridge. A little later he put three or four crystals of its contents into a teacup, and filled the cup with beer,

and this beer Corcoran drank. There was evidence tending to show that the cup was one from which Corcoran had been drinking before this, but whether it was handed to him by the defendant, Burns, after the morphine had been put therein, or was placed on the table so that he got it, is not made clear by the record. There was also evidence tending to show that the drug was put into the cup in a room other than the one in which the deceased was, but, however this may have been, the evidence clearly shows that Corcoran was drunk at the time, and entirely fails to show that he was a user of the poison, or that he knew that any of it had been put into the beer that he drank. Soon thereafter Corcoran became unconscious, and BaTiese requested that he be taken from his house, whereupon the defendant, Burns, and Beveridge carried him out of the house through the back door, and to an old shed near the rear of the house, where he was found dead the next morning, having died from the effects of the morphine taken. When Beveridge and Burns left him in the shed, or near thereto, they repaired to a nearby saloon, where, after a hurried whispered conversation with the bartender, Burns left Beveridge and went out, stating that he would soon be back, and requesting Beveridge to wait for him. This Beveridge did, and when Burns returned he had a check for about $40, which had been issued to Corcoran. Burns tried to have it cashed in the saloon where they then were, but failed, and thereupon he and Beveridge left there and visited several other places, where he introduced Beveridge as Corcoran, and where they tried without success to get cash on the check. Burns claimed before the trial that he had found the check on the walk in front of the BaTiese house, but there was evidence tending to prove that he had taken the same from Corcoran's pocket after the latter had been taken to the shed.

The indictment was returned on the 13th day of January, 1903, and Burns was arraigned on the same day, appearing with the counsel who still represent him. On the

24th day of January he pleaded not guilty to the charge, and demanded a separate trial, which was granted, and, the State electing to first try him, the trial was assigned for the 19th day of February. On the latter date the defendant asked a continuance because of the absence of witnesses whom he claimed would testify to matters material to his defense. The case was continued, and the statement made by the court that it would be put into the first assignment for the March term, unless cause was shown why it should be otherwise. On the 2nd of March it was assigned for trial on the 17th of the same month. On the 16th day of March the defendant Burns again moved for a continuance of the case because of the absence of the same witnesses, Yelton, Gobel, and Connors, and upon practically the same grounds and showing that had before been made. On the hearing of the last motion it was disclosed that the attendance of the witness Gobel could be procured for the trial, as it was in fact; that Yelton had not been subpœnaed, though he lived at Ames, in Story county, and had been interviewed by the defendant's counsel some time before. There was no showing that the attendance of the witness Connors could ever be procured; his whereabouts was unknown, and there was no reason to expect that he would ever be located. After the motion was heard, the State admitted that the witness Yelton would testify as stated in the application for a continuance, whereupon the court overruled the motion as to Connors, and the trial went on. There was no error in so doing; over two months had elapsed during which no knowledge had been obtained as to the location of Connors, and, if it be admitted that diligence in this respect was shown, there were no facts presented for the consideration of the court from which it might reasonably have been expected or believed that his attendance or testimony could be procured at any subsequent time, and, with such a record before it, it was proper to overrule the motion. *State v. Rorabacher,* 19 Iowa, 154; *State v. Farrington,* 90 Iowa, 673.

1. CONTINUANCE.

The court instructed the jury that "when murder —
that is, killing a human being with malice aforethought — is
perpetrated by means of poison, the law implies, because of
2. MURDER IN    the nature of the act, that it was done inten-
FIRST DEGREE:
instruction.    tionally, willfully, deliberately, premeditatedly,
and with malice aforethought, and therefore declares it to be
murder in the first degree. Such being the law, you are not
called upon to consider as to murder in the second degree
nor manslaughter. Your verdict must be guilty of murder
in the first degree, or not guilty." It is urged that there was
evidence before the jury which would have justified the
finding that the morphine was administered to the deceased
through the carelessness or negligent conduct of the defend-
ant, Burns, and that the court should have instructed the
jury on the subject of manslaughter, and permitted it to
determine whether the crime was murder in the first degree
or manslaughter. There was no evidence, however, tending
to show that the poison was given to Corcoran lawfully or
for a lawful purpose. As we have heretofore said, Corcoran
was not shown to have been a user of the drug, or to have
taken it voluntarily, and the defendant made no explanation
of his purpose in administering it to him. The defendant
was addicted to its use, and undoubtedly knew its effect, and
the quantity thereof which could be safely taken. So far as
the record shows, he and the deceased had never met before
their meeting on the street that evening, and yet it was
firmly established that he administered to Corcoran a fatal
dose of the poison, so large, indeed, that portions of it were
found undissolved in his stomach after his death, and that
soon thereafter he took from his unconscious person the check
which he afterwards attempted to cash. In these circum-
stances it was not necessary to submit the question of
manslaughter to the jury. Under section 4728 of the Code,
all murder which is perpetrated by means of poison is mur-
der in the first degree, and a homicide committed by the ad-
ministration of poison with a bad motive or intent is murder

in the first degree, no matter if there was no specific intent to kill. *State v. Van Tassel,* 103 Iowa, 6; *State v. Wells,* 61 Iowa, 629; *State v. Bertoch,* 112 Iowa, 195. There was no error in the instructions complained of, and it was not necessary to instruct as to manslaughter. *State v. Cole,* 63 Iowa, 695; *State v. Smith,* 102 Iowa, 656; *State v. Cater,* 100 Iowa, 501.

We think the morphine bottle was sufficiently identified to admit it in evidence. The testimony of Dr. Beck, that when he first saw the dead body of Corcoran he thought he **8. Evidence:** "had been doped," was not prejudicial to the **conclusion.** defendant, because the uncontradicted evidence proved that his impression was absolutely correct.

After the arrest of the defendant, Burns, and while he was in confinement, Beveridge and the BaTieses, in his presence, related the facts and circumstances surrounding the **4. Evidence:** death of Corcoran, as they claimed them to be; **statements of co-defendants.** these statements were made to the county attorney and other persons, and many of them were either affirmed or denied by Burns. These statements of his co-defendants and himself were admitted in evidence, over his objections. There was no error in admitting them; they tended to implicate him, and he took part in the conversation. We find nothing in the record indicating that any undue advantage was taken of the defendant at the time, and think the statements competent. The slight errors in those signed by the BaTieses were corrected by them on the witness stand, and could not have prejudiced the defendant.

We have given the record in this case very careful consideration, and reach the conclusion that the defendant had a fair and impartial trial, that no error was committed for which there should be a reversal, and that the verdict has such support in the evidence that we should not interfere therewith.

The judgment is therefore AFFIRMED.