STATE OF IOWA, Appellee, v. AMOS HARPER, Appellant.

No. 41495.

FEBRUARY 12, 1935.

REHEARING DENIED JANUARY 24, 1936.

Salinger, Reynolds & Meyers, for appellant.

Edward L. O'Connor, Attorney General, and Walter F. Maley, Assistant Attorney General, for appellee.

POWERS, J.—Two appeals are here involved. The first, from the judgment of the court imposing sentence, and the second from the refusal of the court to entertain a motion for a new trial. These appeals will be considered in the order filed.

■■■ The defendant was charged by a county attorney's information with the crime of murder in the first degree, accomplished by means of poisoning and by placing strychnine poison in the drink of the deceased. To this information he appeared in

open court and orally entered a plea of guilty. In addition, he filed a written plea in which he said:

"Comes now the defendant, Amos Harper, appearing both in person and by his attorney, E. M. Duroe, and enters his plea of guilty to the charge of murder in the first degree as charged in the county attorney's information filed in this cause, in that he did murder Marshall A. Lee, as alleged in said information."

Upon the filing of this plea, the court fixed a time for hearing at which sentence should be pronounced and ordered that witnesses be subpœnaed on request of the defendant at the expense of the county.

At the commencement of the hearing, the court announced that it did not care for any evidence on the question of the defendant's guilt of the crime of murder; that that was admitted by the plea of guilty; that what it wanted was information which would enable it to determine the degree of the offense and the appropriate punishment; and that it would not be technical in ruling on objections to testimony. The hearing took a rather wide range. The written confession of the defendant was put in evidence in which he stated where he bought the strychnine and how he went to the barn of the deceased, put it in bottles containing alcohol, and put the bottles back in the manger where he had found them. There was testimony also of the deceased becoming ill in the barn and being found in a helpless condition with one of these bottles open near him from which a part of the contents had been taken; that the deceased never recovered from this helpless condition; that he was found in the barn with a quantity of dirt and refuse from the barn floor in his clenched hands; that after being taken to the house he would clench the hand of his attendant as though he was experiencing a contraction of the muscles or a paroxysm of pain; and that he died some days later. There was evidence also that following the time when the deceased first became ill and when it appeared that he could not recover, that the defendant, who lived in a house on the same farm with the deceased, forged a check on his account at the bank, and that subsequently the defendant had been caught in the act of robbing a garage in the nighttime. The evidence on the part of the defendant tended to show that prior to these events, the defendant had been a young man of good

habits and apparent good character, that he was twenty-three years of age and married.

At the conclusion of the hearing the court entered judgment that the defendant be confined in the penitentiary at Fort Madison for the period of his natural life at hard labor. The first appeal is from this judgment.

■■■ It is the claim of appellant that under the provisions of section 12913, Code, it was the duty of the court, after the plea of guilty had been entered, to conduct a hearing in the nature of a trial to determine the degree of guilt, and that there was error in receiving the unsworn certificate of a chemist as to the contents of the bottle found in the barn and in receiving in evidence the verdict of the coroner's jury over objections that each was hearsay and incompetent, and it is claimed that the evidence at the hearing was insufficient in that it did not establish that the defendant was guilty of murder at all, much less that he was guilty of murder in the first degree. We are thus called upon to determine the nature of the hearing which the court is required to conduct in a case of this kind and the character and amount of evidence necessary to support a sentence.

I. Statutes similar to our Code section 12913 have been in force in a number of states for many years. Their effect has not been uniformly interpreted. We are cited to many cases from other jurisdictions. So far as we have been able to discover, however, none of these cases go so far as to hold, as counsel for appellant contends, that the effect of the statute is to deprive the plea of guilty of its common-law significance in establishing the commission of the crime charged, and to require proof of the commission of the crime by the defendant at the hearing before the court as though no such plea had been entered. Many cases from other jurisdictions do hold, however, that a plea of guilty entered by the defendant or a verdict of guilty returned by a jury under such a statute establishes nothing as to the degree of the crime, and that the presumption is that the crime was of the second degree and that the burden is on the state to show by competent evidence that the elements necessary to constitute first degree murder were present and that a sentence imposing a penalty for first degree murder will not be sustained unless it is supported by such evidence, and, further, that a verdict of a jury which does not determine the degree is fatally defective. Hall v. State, 31 Fla. 176, 12 So. 449; Casey v. State (Fla.), 156

So. 282; Davis v. State, 39 Md. 355; Jones v. Commonwealth, 75 Pa. 403; Commonwealth v. Morgenthau, 249 Pa. 139, 94 A. 551; Miller v. State, 58 Tex. Cr. R. 600, 126 S. W. 864; People v. Chew Lan Ong, 141 Cal. 550, 75 P. 186, 99 Am. St. Rep. 88; Craig v. State, 49 Ohio St. 415, 30 N. E. 1120, 16 L. R. A. 358; Reppin v. People (Colo.), 34 P. (2d) 71; In re Cole, 103 Neb. 802, 174 N. W. 509, 848. The early Iowa cases of McCauley v. U. S., 1 Morris 641, and State v. Moran, 7 Iowa 236, dealing with this statute, are in harmony with the cases to which we are referred from other jurisdictions.

All these cases, however, deal with situations where proof of actual premeditation and deliberation are required to make out first degree murder and not with cases where the crime is committed by means or under circumstances which the statute makes first degree murder and where no such proof of actual deliberation and premeditation is required. Counsel rely upon cases from the state of Texas. But even in that state where the jury determines the degree on a plea of guilty instead of the court, it is held that where a plea of guilty is entered charging murder in the first degree committed in the attempt to perpetrate a robbery, that it is not error for the court to direct the jury to find murder in the first degree and to fail to instruct them with reference to second-degree murder, because under the circumstances in that case there could be no murder in the second degree. The defendant was either guilty of murder in the first degree or not guilty at all. Miller v. State, 58 Tex. Cr. R. 600, 126 S. W. 864.

Cases from the state of California have also been cited by appellant as sustaining his contention. We find the same situation in that state. A statute there divides the crime of burglary into degrees and provides that, upon a plea of guilty, the court shall conduct a hearing and determine the degree. A defendant pleaded guilty to burglary in the first degree to an indictment which charged burglary generally. It was held that there was no error in the failure of the trial court to determine the degree, that the plea of guilty in the first degree disposed of the question of degree. Ex parte Haase, 5 Cal. App. 541, 90 P. 946.

It is well settled by our decisions that where an indictment or information charges murder committed by means of poisoning and there is a plea of not guilty entered, that no question of degree is involved; that the verdict of the jury in such case must be either murder in the first degree or not guilty. See State v.

Bertoch, 112 Iowa 195, 83 N. W. 967; State v. Burns, 124 Iowa 207, 99 N. W. 721; State v. Robinson, 126 Iowa 69, 101 N. W. 634. In other words, while the statute requires the determination of the degree by the jury in the case of a plea of not guilty and a determination of the degree by the court in case there is a plea of guilty, the statute finds no proper application in any case except in a case where the question of the degree is in issue. If there is no question of degree to be determined by a jury where the charge is murder by means of poisoning and the plea is not guilty, how can it be said that there is such an issue to be determined by the court when the plea is guilty, and, especially, where the plea is guilty of murder in the first degree as charged in the information? We do not believe that in the instant case there was any question of degree to be determined. That question was effectively determined by the information and the plea. Any attempt by the court to determine the degree from the examination of witnesses in such a case would be an idle ceremony.

But if we should concede arguendo that even in such a case the court must by the examination of witnesses determine the degree, the court was not required to make a record of its findings on that question.

The court did conduct a hearing in which witnesses were examined and at which sufficient competent evidence was introduced to show that poison was the means used to accomplish the murder, assuming that the defendant was guilty of the murder, a fact which was established by his plea of guilty. This court has held that while the statute enjoins upon the court in a proper case the necessity of determining the degree, obviously, the purpose is only to enable the court to fix the proper penalty, and we have held that it is not necessary for the court to make any record either of the purpose for which the hearing was held or of the conclusion which the court reached with reference to the degree.

In State v. Cumberland, 90 Iowa 525, 58 N. W. 885, this court said:

"While the proper and better practice is to enter of record the reason why the testimony is taken, and the determination arrived at therefrom by the court, yet such a duty is not enjoined upon the court by the statute, and hence it was not error to fail to do so. What we have said applies with equal force to

the claim that the record must show that the court found the grade of the offense to be murder in the first degree. The statute does no more than to enjoin upon the court the duty of ascertaining and determining from the testimony the degree of the offense. The court is not required, after it has made such a determination, to enter the fact of record, although, as we have said, it would be proper to do so.''  ·

We conclude, therefore, that if the matter were entirely controlled by the provisions of Code, section 12913, there was no question of degree to be determined by the court under the circumstances of this case, but that if the court had been required to determine the degree, there was sufficient competent evidence before the court to show that poison was the means used to accomplish the murder which is established by the plea of guilty, and that the court was not required to make any record of his finding as to the degree.

The case, however, does not rest and should not be made to rest entirely upon the provisions of section 12913. Long after the adoption of that statute and after the cases of McCauley v. U. S., 1 Morris 641, and State v. Moran, 7 Iowa 236, were determined, the Eighteenth General Assembly enacted what is now section 12914, and the two sections must be construed together. These sections are as follows:

''12913. Degree determined. Upon the trial of an indictment for murder, the jury, if it finds the defendant guilty, must inquire, and by its verdict ascertain and determine the degree; but if the defendant is convicted upon a plea of guilty, the court must, by the examination of witnesses, determine the degree, and in either case must enter judgment and pass sentence accordingly.

''12914. Fixing punishment in first degree murder. Upon the trial of an indictment for murder, the jury, if it finds the defendant guilty of murder in the first degree, must direct in its verdict whether the punishment shall be death or imprisonment for life at hard labor in the penitentiary, but if the defendant pleads guilty the court shall so direct, and in either case must enter judgment and pass sentence accordingly.''

That there is some conflict in these two sections is apparent. The last numbered section was adopted long after the first. That

it was intended by its adoption to make some change in the law is obvious and if there be conflict between the sections, therefore, the latter must prevail. We are not called upon to determine the full effect which the adoption of section 12914 had on the preceding section. This much, however, seems clear; that the latter enactment deals exclusively with first degree murder; that it authorizes a plea of guilty to first degree murder; that it provides that where such a plea is entered, the court has only to determine whether the penalty should be death or life imprisonment; and that there is no requirement in the statute in such cases as to how the court shall inform itself so as to determine between the two penalties provided.

In the case of State v. Hortman, 122 Iowa 104, 108, 97 N. W. 981, 982, there was an indictment charging murder in the first degree and a plea of guilty of the homicide charged in the indictment. After the court had conducted a hearing, it announced that it believed the penalty should be death, but fixed a later date for pronouncing judgment. In the meantime, the defendant sought to change his plea from one of guilty to not guilty. The trial court denied the request on the apparent ground that it came after trial in the case, regarding the hearing before the court as a trial. This court, therefore, had for consideration the nature of the hearing after the plea of guilty had been entered, and particularly whether such a hearing was a trial. The court said:

"The views of the court, expressed at the time of the ruling, are incorporated in the abstract before us; and therefrom we gather the thought of the court to have been that the hearing had subsequent to the plea of guilty, to enable the court to fix upon the penalty—death or imprisonment for life—which should characterize the judgment, was, in legal contemplation, a trial, following which no change in plea should be allowed. We cannot admit of soundness in the view thus taken. There was no issue before the court to try, and hence there could be no trial. The indictment presented the charge against the defendant, and by his plea he had admitted the truth of each and every allegation thereof. There was nothing left to do but to pronounce judgment at the time that might be fixed therefor. It is provided by statute (Code, section 4728) that, in cases of murder in the first degree, the jury, if tried to a jury upon a plea of not guilty, shall deter-

mine whether the defendant shall be punished by death or by imprisonment for life; if the defendant pleads guilty, the character of the punishment shall be determined by the court. The statute does not prescribe in what manner the court shall proceed to advise itself, nor does it define the character of the information upon which the court may act, or limit the sources thereof. The determination of the question is with the court, and the court alone. That it is eminently proper in such cases to take the evidence of witnesses who have knowledge of the occurrence is readily conceded, but there is no requirement that this be done. The court may act upon any information coming to it from any source that satisfies its conscience and its sense of duty.''

The foregoing language of the court obviously is based on the statutory provision which was then in the law and which is now section 12914. In view of the provisions of that section and of the above-quoted language of this court, we are impelled to hold that in a case like the instant case, where the information charges an offense which could be nothing but first degree murder and the plea specifically states that the defendant pleads guilty to first degree murder and to the commission of the murder as charged in the information, there is only one question for the court to determine and that is whether the penalty of death or life imprisonment should be imposed, and that the court in such a situation is not required to conduct a hearing at all, but may, as said in the Hortman case, act upon any information coming to it from any source that satisfies its conscience and its sense of duty.

It follows that there was no error in the reception of testimony by the trial court in this case, nor in the failure of the court to fix the degree of the offense and no lack of sufficient evidence to enable the court to determine the proper penalty.

■■■ II. Complaint is also made that no judgment of conviction of the crime of murder was entered in this case, the only judgment being that the defendant be confined in the penitentiary for life at hard labor. It would hardly seem necessary to suggest that in a matter as serious as this, where a man is being deprived of his liberty for life, it would be proper, and much the better practice, for the court to enter a judgment of conviction of the specific crime charged in the information or indictment, and that this should be done whether the conviction results from

a verdict of a jury or a plea of guilty. The judgment entry would then show the particular crime of which defendant was convicted, and would furnish the reason for, and give support to, the judgment imposing the penalty. However, it seems well settled that a failure to enter a separate judgment of conviction does not constitute error, and that the judgment imposing sentence is sufficient. State v. Cook, 92 Iowa 483, 61 N. W. 185; State v. Rudd, 97 Iowa 389, 66 N. W. 748; State v. McCoy, 196 Iowa 278, 194 N. W. 265.

■■■ III. On the second appeal, we are first confronted with the question as to whether or not the term of court at which sentence was pronounced on December 31, 1931, was still open when the defendant's motion was filed on February 13, 1932. The judge who had held the term began another term in Kossuth county on the 4th day of January, 1932. He lived in Storm Lake and had kept the term at Storm Lake open, without dispute, until the 16th day of January. On that day he held court at Storm Lake and directed the clerk to make the usual order of the adjournment and the clerk spread upon the permanent records of the court the following:

"There being no further proceedings to come before this court, the same is adjourned sine die this 16th day of January."

The record book containing this entry was never signed by the court or any judge thereof. It is the claim of appellant that court had not been adjourned and was still in session when he filed his motion on February 13th.

A new term of court was scheduled to open in Buena Vista county on February 15th. It seems to be conceded that if the court had entered in the court calendar an entry such as set out above, that it would operate as an adjournment of court. It is difficult to see why the same consequences do not follow if the court orally makes the order and directs the clerk to enter it and the entry is then made in the permanent records of the court by the clerk, whose statutory duty it is to record the proceedings of the court. We are of the opinion that the term of court was adjourned on the 16th day of January, 1932.

■■■ IV. The motion which was filed was designated a "motion in arrest of judgment and for new trial and for writ of error coram nobis or other review". It is well settled by express provision of our statutes and many adjudications of this court

that a motion in arrest of judgment in a criminal case must be filed within term time. Code, section 13947. It is equally well settled that a motion for a new trial in such case must be filed before judgment. Code, section 13943.

■■■ In so far as the motion may be treated as an application for writ of error coram nobis or other review, it could not be entertained because this court has held that our code of criminal procedure is complete in itself and that common law proceedings not embraced in the code are not available, and has especially held that the writ of error coram nobis has been abolished. Boyd v. Smyth, 200 Iowa 687, 205 N. W. 522, 43 A. L. R. 1381. There was no error, therefore, in the refusal of the court to entertain the motion or in the action of the court in striking the motion.

■■■ It might further be suggested that the motion is, in effect and in reality, an application for permission to withdraw the plea of guilty and enter one of not guilty, and it comes not only after judgment is entered, but after the defendant has been confined in the penitentiary for nearly six weeks and the term of court in which the judgment was entered has been adjourned. It is well settled, of course, that a plea of guilty cannot be withdrawn after judgment.

We have carefully gone over the record.. We are convinced that the trial court fully safeguarded the rights of the defendant at every stage of the proceedings, and that this case on both appeals should be and is hereby affirmed.

ANDERSON, C. J., and ALBERT, KINTZINGER, DONEGAN, PARSONS, and HAMILTON, JJ., concur.