## FREDERICK D. REYNOLDS V. STATE OF NEBRASKA.

FILED FEBRUARY 23, 1899.  No. 10472.

1. **Bigamy.** A married person will not be absolved from the bonds of matrimony by believing, even upon information apparently reliable, that the marriage has been dissolved by death or divorce. Public policy forbids that the permanence of the marriage relation should depend upon anything so precarious as the mental state of one of the parties.

2. ———. Whether in a prosecution for bigamy an honest and reasonably grounded belief entertained by the defendant in the death of an absent spouse is of itself a complete defense, *quære*.

3. ———: EVIDENCE. In a prosecution for bigamy it is prejudicial error to permit the state to reinforce a disputable presumption in regard to the capacity of one of the parties to contract a valid marriage, by the introduction of incompetent evidence directly bearing upon the question.

4. ———: DIVORCE: PROOF. To prove a divorce the record of the decree, or a duly authenticated copy thereof, is the appropriate and only competent evidence.

5. **Review:** EXCEPTIONS. In the absence of an exception a ruling made by the district court during the progress of the trial cannot be reviewed.

6. **Presumptions:** EVIDENCE. When a rebuttable presumption possessing no inherent probative force is met by opposing evidence, it is entirely destroyed and ceases to be a factor in the trial, unless it be required to turn an evenly balanced scale.

ERROR to the district court for Hayes county. Tried below before NORRIS, J. *Reversed.*

*J. L. McPheely* and *E. E. Ferris*, for plaintiff in error.

References: *People v. Lambert*, 5 Mich. 349; *Gahagan v. People*, 1 Parker's Crim. Rep. [N. Y.] 378; *Bird v. State*, 21 Gratt. [Va.] 800; *King v. State*, 40 Ga. 244; *Rex v. Deeley*, 1 Moody C. C. [Eng.] 303; *Eaton v. Hasty*, 6 Neb. 419; *Davis v. Commonwealth*, 13 Bush [Ky.] 318.

*C. J. Smyth*, Attorney General, and *W. D. Oldham*, Deputy Attorney General, for the state.

References: *Moses v. Comstock*, 4 Neb. 516; *Lord v. State*, 17 Neb. 526; *Haggin v. Haggin*, 35 Neb. 376; *Montgomery v. Bevans*, 1 Sawyer [U. S.] 666; *Miles v. United States*, 103 U. S. 304; *Taylor v. State*, 52 Miss. 84; *People v. Beevers*, 99 Cal. 286; *Shafher v. State*, 20 O. 1; *Walls v. State*, 32 Ark. 565; *Beggs v. State*, 55 Ala. 108; *Cooley v. State*, 55 Ala. 162.

SULLIVAN, J.

The defendant Frederick D. Reynolds was convicted of bigamy and sentenced to imprisonment in the penitentiary for a term of seven years. He was found guilty on the first count of the information, which charges a first marriage with Jennie Ford in Beaverhead county, in the state of Montana, in February, 1895, and a second marriage with Lizzie J. Caulk in Hayes county, Nebraska, in July 1897. The solemnization of both marriages, as alleged in the information, was shown by competent evidence and was admitted by the defendant while testifying as a witness in his own behalf. The hypothesis upon which the defense was conducted was that the Montana marriage was void for the reason that both the contracting parties were at the time bound by prior matrimonial alliances and so lacking in legal capacity to marry or live in lawful wedlock. Jennie Ford being produced as a witness for the state on cross-examination gave testimony from which it appears that she,

Reynolds v. State.

as well as the defendant, was incorrigibly addicted to matrimony. She testified that she married J. J. Jordon at Vinton, Iowa, in 1883; that she married Frank Ford in Chicago in 1884, and that, at Dillon, Montana, in August, 1892, she was wedded to Mark S. Purman. At the conclusion of the cross-examination she was dismissed by the state, but was subsequently recalled and, over defendant's objection, testified that at the time she married Reynolds all of his predecessors in marital right were dead. She also testified that she had obtained a divorce from Purman in 1893. During the course of a further cross-examination it was developed that the only information the witness possessed in regard to the death of Purman was derived from a letter written to her by some one in Kansas City. Whereupon the defendant moved to strike out the testimony. The motion was denied for the reason suggested by the following remark of the judge who presided at the trial: "An honest belief of the death of a husband or a wife, together with some reasonable ground for their believing it, would be a good excuse. I believe on that ground it ought to be overruled." The motion should have been sustained. The mere reception of the letter did not render the witness an eligible candidate for matrimony. Neither reason nor authority sustains the position of the trial court upon this question. There are, it is true, cases which hold that an honest belief in the death of a former husband or wife, when such belief is reasonably grounded, is a defense to a prosecution for bigamy; but if the doctrine of these cases is sound, which we do not concede, it has no application whatever to the facts of this case. The witness was not on trial; her intent, whether criminal or innocent, was not in issue, and, therefore, her belief touching the contents of the letter was wholly immaterial. A married person cannot become absolved from the bonds of matrimony by believing, even upon information apparently reliable, that the marriage has been dissolved by divorce or death. Public

policy forbids that the permanence of the marriage relation should depend on anything so precarious and elusive as the mental state of one of the parties. But it is contended by the attorney general that the refusal of the court to sustain the motion was not prejudicial error, because the law would presume in favor of the innocence of Jennie Ford that Purman was dead at the time she contracted the marriage with Reynolds. The better opinion seems to be that there is in such case no absolute and inflexible presumption, but that the question is to be determined by the jury from all the facts in the case. (*Williams v. Williams*, 63 Wis. 58; *Town of Northfield v. Plymouth*, 20 Vt. 582; *Johnson v. Johnson*, 114 Ill. 611; *Rex v. Harborne*, 2 Ad. & El. [Eng.] 540*.) But, conceding that the presumption of innocence should be indulged notwithstanding the reasonable and probable presumption of life, it does not follow that there was not prejudicial error in submitting to the jury the evidence against which the motion was directed. There was evidence in the case that Purman was seen alive and well at Evans, Colorado, in 1897. This evidence destroyed the presumption of his death and left the question for the jury to determine upon a consideration of all the facts and circumstances proven on the trial. As applied to the facts in this record, the presumption was nothing more than an arbitrary rule. It possessed no inherent probative force. Its value depends upon law and not upon logic. When it met opposing testimony, it was completely overthrown and ceased to be a factor in the trial. (*Graves v. Colwell*, 90 Ill. 612.) This being so, it follows that the court permitted the jury to find that Purman was dead and to rest their finding upon the testimony of Jennie Ford with respect to the contents of a letter which was neither produced nor accounted for. It cannot be said that this evidence did not exert a decisive influence upon the jury in reaching their verdict. It was palpably incompetent and should have been rejected. The defendant also complains because Jennie Ford was permitted

Reynolds v. State.

to give oral evidence of the fact that she had obtained a divorce from Mark S. Purman. The evidence was clearly secondary, and its reception was prejudicial error. If a divorce had been obtained, a duly authenticated copy of the decree was the appropriate and only legal evidence of the fact. (*Commonwealth v. Boyer*, 7 Allen [Mass.] 306; *State v. Barrow*, 31 La. Ann. 691; *Tice v. Reeves*, 30 N. J. Law 314; 1 Jones, Evidence sec. 199; 4 Am. & Eng. Ency. Law [2d ed.] 45.) This evidence may have influenced the jury to find that Jennie Ford possessed capacity to contract a valid marriage with the defendant. At any rate, it is impossible to say that it did not have that effect. Other rulings of the trial court assigned for error cannot be considered, because in some instances appropriate objections were not made and in others no exceptions were taken. The instructions given seem to be lacking in accuracy of statement, while at least one of the instructions tendered by the defendant and refused by the court states a correct principle, was applicable to the facts, and should have been given. But as there was no exception to the instructions, the assignments in relation to them cannot be considered. It has been suggested, and is doubtless true, that in this case "outraged Justice has laid her avenging lash on the back of one who honestly deserves the scourge;" but we cannot for that reason alone affirm the judgment. The jurisdiction of the courts is not co-ordinate with that of the mob. The defendant, by his own confession, is an inveterate bigamist, but notwithstanding that fact he is, under the constitution and laws of this state, entitled to a fair and impartial trial. Notwithstanding his odious character he must, like every other person accused of crime, be tried and convicted by due course of law or else go free. The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.