STATE OF IOWA, Appellee, v. ARCH BREEDING, Appellant.

No. 42885.

SEPTEMBER 24, 1935.

REHEARING DENIED DECEMBER 19, 1935.

LeRoy H. Johnson, for appellant.

Edward L. O'Connor, Attorney General, Walter F. Maley, First Assistant Attorney General, and Lester L. Orsborn, County Attorney for appellee.

KINTZINGER, C. J.,—The defendant, a married man, about 45 years of age, was charged with murdering his wife on October 5, 1934. On October 22, 1934, after having been duly arraigned, and being present in court and represented by counsel, the defendant entered a plea of guilty of the crime charged in the indictment. Thereupon, the court as required by law, heard the evidence of witnesses for the purpose of determining the degree of defendant's guilt and fixing the penalty. After hearing the evidence, and being fully advised in the premises, the court, on October 22, 1934, determined that the defendant was guilty of murder in the first degree, and on the same day entered an order fixing the 26th day of October, 1934, as the time for pronouncing sentence. Pursuant to such order, the court, on October 26, 1934, entered judgment upon defendant's plea of guilt, and sentenced him to death thereunder, as provided by law. From this judgment, the defendant appeals.

Appellant contends that the court erred in imposing the death penalty, instead of life imprisonment, upon the ground that the facts did not warrant the maximum penalty, because the act of killing was shown to have been sudden and impulsive and not of a deliberate and premeditated nature. The evidence submitted to the court disclosed substantially the following facts:

The defendant and the deceased, Florence Breeding, were husband and wife, and had one daughter, Bernice Breeding, about 18 years of age. He and his wife had marital troubles for over a year prior to her death. The evidence fairly tends to show that defendant's misconduct towards his wife and daughter was the sole cause of their domestic trouble. It also tends to show that defendant never had any regular employment; that he contributed very little toward the support of his wife and daughter; and that his own keep was mainly provided from the earnings of his wife. A divorce action had been discussed be-

tween the defendant and his wife long before it was commenced. On October 3, 1934, an action for a divorce was commenced against him, and he accepted service of the original notice therein on the same day. On the following day, he moved out of the home.

On the evening of October 5, 1934, he returned to the house for the purpose of talking to his wife about settling their trouble. Finding no one there on his arrival, he waited around until about 10 o'clock, when his wife and daughter returned. He then talked to his wife for about five minutes regarding her intentions about going through with the divorce, and was advised that she would. He thereupon went to a cigar store uptown, where he sometimes did janitor work, for the purpose of procuring a gun which he knew was in the store. After remaining there for nearly an hour, he secured the revolver and left the store shortly after 11 p. m. The clerk in charge of the cigar store said that while the defendant was there, he sat around, talked to him about a football game, and was engaged in a general conversation with him before he left the store. On leaving the store, the defendant said to the clerk: "Don't be surprised if you hear anything before morning."

After leaving the cigar store, he returned to Mrs. Breeding's home. She and her daughter had just prepared for bed when the defendant knocked at the door. His daughter testified that: "Her mother asked him why he came at that time of night. It was after eleven o'clock and he started in swearing, * * * she screamed, and he started * * * shooting at her." He fired five shots, one of which entered her temple, killing her instantly. From there he fled into the country, and a few hours later telephoned the officers to come and get him. Before they arrived, he returned to the city and surrendered himself at the county jail.

After his arrest, the defendant freely admitted the killing and told the officers he was willing to be hanged. The defendant pleaded guilty to the crime of murder in the first degree. It then became the court's duty to hear the evidence. This was done.

It is not claimed that defendant was not guilty of murder in the first degree because he pleaded guilty to the offense charged in the indictment. It is conceded that he was guilty of murder in the first degree, but it is claimed that under the facts he should

not have received the extreme penalty, because the act committed was sudden and impulsive and not of a deliberate and premeditated nature.

In the first place, the concession that he was guilty of murder in the first degree necessarily presumes that the act was deliberate and premeditated, because these are necessary elements in the crime of murder in the first degree. Section 12911, Code of 1931. In the second place the court determined from the evidence submitted that he was guilty of murder in the first degree, and that it thereupon became the court's duty to fix the penalty.

We cannot reverse except for errors committed by the trial court. No error was committed, unless it be that the court abused its discretion in imposing the death penalty. The penalty for a conviction of murder in the first degree is either life imprisonment or death. In this action it was the province of the trial court to impose either. After hearing the evidence, the court imposed the maximum penalty, and its judgment cannot be set aside except for error committed, or for a clear abuse of the court's discretion in imposing the maximum penalty.

The defendant was arraigned and pleaded guilty. Until this plea was entered and until after the judgment was rendered thereon, not a single error appears in the record. The only possible reason that can be urged for setting aside or reducing the sentence is an abuse of the court's discretion in imposing the maximum penalty. If there was no abuse of such discretion, the penalty should stand. State of Iowa v. Tracy, 219 Iowa 1412, 1419, 261 N. W. 527, 531, and cases cited therein. In that case, we said:

"If it does not clearly appear that its discretion was abused, this court should not disturb the judgment. The penalty for the commission of murder in the first degree has been fixed by the legislature. It is not our duty to legislate, neither have we the power of clemency invested in the chief executive. After a defendant is found guilty of murder in the first degree, we should let the statutory penalty fall."

In this case as in that, the trial court, under a plea of guilty, was required to fix the sentence. This was done and the sentence was imposed as prescribed by the legislature.

The defense of insanity was not pleaded, there was no proof

of any facts showing justification, and no circumstances were shown in any manner mitigating the act committed. There is no evidence of any mental incapacity of defendant at the time; on the contrary, the evidence tends to show that at and during the time he was securing the revolver, he was apparently deliberating upon and contemplating the murder. The evidence also tends to show that he appeared to be "perfectly normal" during the time he was at the cigar store, just preceding the killing.

While we realize the enormity of the punishment inflicted, we also appreciate the gravity of the offense committed. We are conscious of the importance of this action and have given it deep and serious consideration, commensurate therewith.

The dissenting opinion filed in this case assumes an imaginary situation not sustained by the record. It is based almost wholly upon the following propositions: (1) that the defendant did not have a fair trial before pleading guilty; and (2) that he was not given sufficient time to make a proper showing after his plea of guilty was entered.

The record shows that the defendant had the benefit of counsel. The fact that he pleaded guilty in the presence of and with the consent of his counsel, instead of standing trial, does not in any manner show that he did not have a fair trial. There is not one word in the record showing that the defendant or his counsel ever made any complaint of the action of the court either in receiving the defendant's plea of guilty, or in hearing the testimony before imposing sentence, in the manner disclosed by the record.

The defendant appeared with counsel at the time the evidence was taken. There was no request by him or his counsel for a postponement of that hearing for the purpose of enabling him to produce additional evidence in justification or mitigation of the offense committed. Nor is there any claim that any further investigation by the defendant would have disclosed additional facts, which would in any manner warrant a modification of the sentence imposed.

The record in this case fairly warranted the court in finding there was a deliberate and premeditated intent on the part of defendant to kill decedent. The lower court, after hearing the evidence, determined that he was guilty of murder in the first degree and imposed the death penalty. It is our finding, under

the record, that appellant has failed to show such an abuse of the court's discretion in imposing the death penalty as to warrant a modification.

Our conclusion in this case is controlled by the rule announced in State v. Tracy, hereinabove referred to, and cases therein cited. The reasons for the rule are fully discussed in that case, and a further consideration of them is deemed unnecessary. We find no error or abuse of the lower court's discretion in entering the sentence imposed. The judgment of the lower court is, therefore, hereby affirmed.—Affirmed.

ALBERT, ANDERSON, DONEGAN, PARSONS, POWERS, and HAMILTON, JJ., concur.

RICHARDS and MITCHELL, JJ., dissent.

RICHARDS, J. (dissenting)—The writer, respectfully dissenting from the majority opinion, directs attention to the following facts shown by the record before us: The crime charged was committed October 5, 1934. The indictment was returned October 18, 1934. On October 22, 1934, there transpired, during but one session of the court, the following events: The defendant was brought before the court; being without counsel, an attorney was appointed to represent him; thereupon the defendant was arraigned; his plea of guilty was entered, and immediately the examination of witnesses was begun to determine the degree of the offense and to fix the penalty. These proceedings were all concluded on the same day, October 22d.

The province of the supreme court is to examine this record, without regard to technical errors or defects not affecting the substantial rights of the parties, and render such judgment on the record as the law demands; it may affirm, reverse, or modify the judgment, order a new trial, or reduce the punishment. Code section 14010.

The district court entered judgment that the defendant be executed. To the writer it seems that this judgment cannot be affirmed, for the reason that the proceedings, above described, failed to accord to defendant certain of his fundamental rights, and did not warrant the action of the district court. The defendant was entitled to defense by counsel. Code section 13773. This the defendant did not have, in any substantial sense, by reason of the casual and summary fashion of the proceedings them-

selves. The degree of the offense, and the existence or lack of extenuating facts or circumstances, as determining the punishment to be adjudged, were issues the court set out to determine in these proceedings. Code section 12913. With his life at stake, thorough investigation and careful preparation and presentation of the facts and law involved in these issues, by counsel, was defendant's right. Such investigation and preparation were in fact the most essential elements of defendant's right to defense by counsel. The record before us discloses that the trial of these issues followed immediately upon the appointment of counsel, at the same sitting of the court, and was concluded on that day. So, without time or opportunity being given the appointed counsel for any preparation or investigation, can it be said that defendant had the aid of counsel in any substantial sense? Can it be said that defendant enjoyed a fair hearing upon the vital issues the court was determining?

In the recent case of Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55, 59, 77 L. Ed. 158, 84 A. L. R. 527, defendants, charged with a capital offense, were without counsel, and until the morning of the trial no lawyer had been named or definitely designated to represent the defendants, although prior to that time the judge had appointed all members of the bar for the limited purpose of arraigning defendants. Whether they would represent the defendants thereafter, if no counsel appeared in their behalf, was a matter of speculation only, or, as the judge indicated, of mere anticipation on the part of the court. In that case the court said:

"Such a designation, even if made for all purposes, would, in our opinion, have fallen far short of meeting, in any proper sense, a requirement for the appointment of counsel."

The court then refers to the fact that one prominent member of the bar joined the prosecution of the case, after such appointment of the whole bar; this attorney supposing some other attorney would defend. The court then proceeds to say with reference to the matters just detailed:

"In any event, the circumstance lends emphasis to the conclusion that during perhaps the most critical period of the proceedings against these defendants, that is to say, from the time of their arraignment until the beginning of their trial, *when*

*consultation, thoroughgoing investigation and preparation were vitally important, the defendants did not have the aid of counsel in any real sense, although they were as much entitled to such aid during that period as at the trial itself.* People ex rel. Burgess v. Risley, 66 How. Prac. (N. Y.) 67; Batchelor v. State, 189 Ind. 69, 76, 125 N. E. 773.'' (Italics supplied.)

The court, in the Powell case, then points out that on the morning the case was called for trial, a Mr. Roddy, a lawyer from a foreign state, advised the court that he did not appear as counsel, but that he would like to appear along with counsel that the court might appoint; that he had not been given an opportunity to prepare the case; that he was not familiar with procedure in Alabama and had come as a friend of certain interested persons of that foreign state. A member of the local bar then expressed a willingness to help Mr. Roddy, to which the trial court responded: ''All right, all the lawyers that will; of course I would not require a lawyer to appear if—'' With this dubious understanding the trial immediately proceeded. Again quoting the court's language in the Powell case:

''It is not enough to assume that counsel thus precipitated into the case thought there was no defense, and exercised their best judgment in proceeding to trial without preparation. *Neither they nor the court could say what a prompt and thoroughgoing investigation might disclose as to the facts.* No attempt was made to investigate. No opportunity to do so was given. Defendants were immediately hurried to trial. Chief Justice Anderson, after disclaiming any intention to criticize harshly counsel who attempted to represent defendants at the trials, said: '* * * The record indicates that the appearance was rather pro forma than zealous and active. * * *' Under the circumstances disclosed, we hold that defendants were not accorded the right of counsel in any substantial sense. To decide otherwise, would simply be to ignore actualities. This conclusion finds ample support in the reasoning of an overwhelming array of state decisions, among which we cite the following: Sheppard v. State, 165 Ga. 460, 464, 141 S. E. 196; Reliford v. State, 140 Ga. 777, 79 S. E. 1128; McArver v. State, 114 Ga. 514, 40 S. E. 779; Sanchez v. State, 199 Ind. 235, 246, 157 N. E. 1; Batchelor v. State, 189 Ind. 69, 76, 125 N. E. 773; Mitchell v. Commonwealth, 225 Ky. 83, 7 S. W. (2d) 823; Jackson v. Commonwealth, 215 Ky. 800,

287 S. W. 17; State v. Collins, 104 La. 629, 29 So. 180, 81 Am. St. Rep. 150; State v. Pool, 50 La. Ann. 449, 23 So. 503.; People ex rel. Burgess v. Risley, 66 How. Prac. (N. Y.) 67; State ex rel. Tucker v. Davis, 9 Okl. Cr. 94, 130 P. 962, 44 L. R. A. (N. S.) 1083; Commonwealth v. O'Keefe, 298 Pa. 169, 148 A. 73; Shaffer v. Territory, 14 Ariz. 329, 333, 127 P. 746.

"It is true that great and inexcusable delay in the enforcement of our criminal law is one of the grave evils of our time. Continuances are frequently granted for unnecessarily long periods of time, and delays incident to the disposition of motions for new trial and hearings upon appeal have come in many cases to be a distinct reproach to the administration of justice. The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a serious crime, *must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense.* To do that is not to proceed promptly in the calm spirit of regulated justice but to go forward with the haste of the mob." (Italics supplied.)

In the same opinion the court, affirming the duty of the trial court to assign counsel for defendants not represented, says:

*"And that duty is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case.* To hold otherwise would be to ignore the fundamental postulate, already adverted to, 'that there are certain immutable principles of justice which inhere in the very idea of free government which no member of the Union may disregard.' " (Italics supplied.)

In State of Iowa v. Barr, 123 Iowa 139, 98 N. W. 595, 597, the attorney whom defendant had procured to represent him withdrew from the case. Thereupon the court appointed other counsel to defend, and he, having no knowledge of the case, asked that the trial be postponed until the next day. But at the suggestion of the court the trial proceeded at once. In its opinion the supreme court of Iowa recognized specifically the duty imposed by what is now Code section 14010, that is, the duty to reverse a criminal case when it appears on the record that the defendant has not had a fair trial even though no exceptions to

specific errors of law in the rulings of the court below have been preserved. Appreciating such duty, the court said:

"It is apparent from the record that the case was one not without difficulty as to the points of law as well as the questions of fact, and the conclusion we reach that the conviction should not be sustained is based, not on errors of law committed in rulings in the trial of the case, but on the action of the judge in requiring the defendant to go to trial without affording him a reasonable opportunity to be defended by counsel, and in so conducting the trial, in view of these circumstances, as to bring about a conviction without reasonable opportunity to have the merits of the case presented on the law and the facts."

The court was also of the opinion that the misconduct of counsel for the state in argument was such that it might properly be said that defendant was deprived of a fair trial thereby, though no proper objections were made thereto or rulings asked thereon; the misconduct, in the opinion of the court, being such that it could not be cured by any ruling of the court. The opinion further states:

"We reverse the case, therefore, not on any one particular ruling of the court, but, rather, on the general ground that the verdict does not appear to have been the result of a fair trial."

In the case at bar, the majority opinion states:

"We cannot reverse except for errors committed by the trial court."

It states that not a single error appears on the record. These statements are the very foundation, or central thought, of the majority opinion. Building thereon its conclusion, the majority opinion holds, in its substance and effect, that nothing can be considered on this appeal, except the question of the possible abuse of discretion of the trial court in imposing the death penalty. With these propositions the writer cannot agree. Were the case at bar a civil-law action, the writer would agree with the statement of the majority as to what would be reviewable. But the rule in law actions is not to be confused with that in criminal cases. The distinction is found in the fact that by section 14010, supra, there is imposed on this court of last resort in criminal cases a duty apparently not recognized in the majority opinion;

that is, the duty to examine the record, without regard to technical errors or defects which do not affect the substantial rights of the parties, and to render such judgment *on the record* as the law demands. As above stated, such examination of the record reveals that four days after the indictment was returned defendant, without counsel up to that time, was brought into court and an attorney was appointed to represent him. Defendant was arraigned. A plea of guilty was thereupon entered. The court then at once proceeded with the examination of witnesses to determine the degree and the penalty to be imposed. All this was done at one session of the court. It may be noted that the plea was entered by the appointed counsel who had just come into the case without taking the statutory time in which to give consideration to a step of such vital importance to defendant. But passing that, the serious and grievous thing shown by the record is that the court, at the same sitting, and without affording time or opportunity for any preparation or investigation in defendant's behalf of facts to be submitted as a part of the hearing, held the hearing and examination of witnesses to determine the degree and fix the penalty. At this hearing the law gave defendant the right, and his only opportunity, to show by witnesses or otherwise any facts in extenuation. But the record shows that the proceedings deprived defendant of both this right and this opportunity. *Neither the appointed counsel nor the court could say what a thorough investigation of facts might reveal, nor were they warranted in proceeding on the assumption that there were no extenuating facts.* In its essentials, representation by counsel was not accorded defendant, because there was no possibility for counsel to function in the very vital and essential thing for which the appointment was made. The defense by counsel was only pro forma, merely colorable. The result is reflected in the statement in the majority opinion to the effect that the record contains no proof of any facts of justification or mitigation. The grievous thing is that it was made essentially impossible for the defendant to prove any such facts that there may have been. Defendant did not have a fair and full hearing. Upon the record, and in the light of the authorities cited, the writer would reverse the judgment and remand the case for the proceedings in the district court that are provided by law.

MITCHELL, J., joins in dissent.