STATE OF IOWA, Appellee, v. MARVIN T. GRATTAN, Appellant.

No. 43236.

JULY 31, 1936.

REHEARING DENIED DECEMBER 17, 1936.

J. A. Nelson, J. G. O'Brien, and James W. Willett, for appellant.

Edward L. O'Connor, Attorney General, Walter F. Maley, First Asst. Attorney General, T. H. Carolan, County Attorney, and E. P. Shea, Special Asst. County Attorney, for appellee.

MITCHELL, J.—On the morning of July 21, 1933, Marvin T. Grattan walked to the post office at Decorah to get his mail. This consisted of some papers, a letter containing some score cards, and a newspaper clipping giving information as to races that had been held a few days previously in Indiana. Grattan was exceedingly interested in horses and horse-racing, and at one time had been a driver and had participated in that position in many races, later acting as judge of the various race meets held in that community. He was a frequent visitor at the fairgrounds near the city of Decorah, where he enjoyed looking over the horses and watching them being trained. On the day above mentioned, Grattan walked to the fairgrounds, to what is known as the "new barn", sat down in a chair and showed some score cards and a clipping concerning a horse named "High Celia", which he claimed had been driven by Dan Alleman, with a balloon tire sulky. At that time Wesley Mead and Claude Mead were taking care of a horse in the north end of the barn, called "Chestnut Frisco". They were getting this horse ready to "jog", which means driving the horse around the track in the opposite direction from what is customarily done in racing. Wesley Mead was interested in the score cards. There is a question raised by the State whether Grattan had a horse magazine known as the "Sportsman" or "Horsemen and Fair World" on this first visit. It was the contention of the defense that he had

the "Sportsman" on this trip, which contained no information as to the Indiana races, but Grattan claimed to have a clipping sent by Dan Alleman, stating that he had driven "High Celia" with a balloon tire sulky. Both of the Meads had been present at this race and immediately took issue with Grattan, saying that this was not so. The discussion became rather heated. According to Grattan, he was called a liar and other abusive names, and was violently jerked from the chair in which he was sitting. Shortly thereafter he left the fairgrounds and returned home. It is his claim that upon arriving home he found the magazine "Horsemen and Fair World", in which appeared the article concerning "High Celia" and which he pencil-marked. He then called his grandson Henry, who was sleeping, having returned from a fishing trip, and asked him to take him to the fairgrounds in his automobile. Upon arriving at the horse barn Grattan found that Claude and Wesley Mead were grassing "Chestnut Frisco". It is his story that he informed them that he came out to prove that he was not a liar and showed the article in the magazine "Horsemen and Fair World" with reference to "High Celia" having been driven with a balloon tire sulky. He did admit that he was wrong when he said that Dan Alleman had driven this horse. Again a verbal combat took place between Claude Mead and Grattan. There is a dispute in regard to what took place at that time, the Meads accusing Grattan of having returned to the fairgrounds for the purpose of getting into a fight. Grattan was ordered from the barn. His grandson, who was sitting outside at the wheel of the automobile, hearing the loud talk, got out of the car and entered the barn. The Grattans refused to leave the barn, and it is the claim of the defense that Claude Mead took a pitchfork that was hanging on the wall and started towards Henry Grattan. Henry was headed towards the south door and was being pursued by Claude Mead. Marvin Grattan drew his pistol and when only a few feet from Mead shot him in the back. The bullet passed almost completely thru his body, and on the evening of July 21st he died from the effects of the wound.

Marvin Grattan had been a soldier in the Northern Army during the Civil War, and it was his claim that since the Civil War he had always carried a pistol and that that was the reason for his having the pistol on that fateful day.

Marvin Grattan was indicted and charged with murder in

the first degree. He entered a plea of not guilty. The case was submitted to a jury, which returned a verdict of "guilty of murder in the first degree", fixing the punishment at life imprisonment in the penitentiary, at hard labor. From this verdict Grattan perfected an appeal to the supreme court of Iowa and the case was reversed on account of legal error committed in the trial, and was remanded for further trial to the district court of Winneshiek county. See State v. Grattan, 218 Iowa 889, 256 N. W. 273.

On the 27th day of May, 1935, the case was again called for trial. Marvin T. Grattan was represented by three attorneys, and at that time changed his plea from that of "not guilty" to "guilty", and filed the following written plea of guilty in the district court of Winneshiek county: "Comes now the defendant, Marvin T. Grattan, in open court, and pleads that he is guilty of the offense charged in the indictment." Upon the filing of this plea of guilty, the court, in compliance with Code section 12913, fixed a time and place for the examination of witnesses to determine the degree. This was some few days after the plea of guilty was entered. It was stipulated at that time that the transcript of the evidence in the first trial and all of the exhibits which were offered, might be considered by the court in his determination of the degree of the offense of which the defendant was guilty under his plea. A hearing was held as required by the law of Iowa. There is no question that the defendant was properly represented by three able and distinguished members of the bar of this State. It is interesting to note that one of the counsel for defendant—Judge Willett—better than seventy years ago served with the defendant in the Northern Army during the Civil War and that they participated in certain engagements in that great struggle. Thus we find these comrades of 1864, one charged with murder in the first degree, and the other fighting with all of his ability to secure the liberty of his comrade of Civil War days.

It is the claim of the appellant that on the evidence submitted to the lower court, altho he entered a plea of guilty, a verdict of not guilty should have been entered by the court. The lower court in his finding announced that he had read the transcript of the evidence in the first trial, which consisted of several volumes. This court has also gone thru the transcript and on account of the seriousness of this case has given it very

careful consideration. We cannot, however, agree with the contention of the appellant that there is no evidence upon which he could have been found guilty.

In the case of State v. Smith, reported in 127 Iowa 528, at page 529, 103 N. W. 769, 770, this court said:

"No error was committed by the trial court, unless it be found that it abused its discretion in fixing the penalty. Code, section 4728, provides, in substance, that whoever is guilty of murder in the first degree shall be punished with death or imprisonment for life, as determined by the court, if the defendant pleads guilty. Manifestly, a large discretion is vested in the trial court in such cases, and we should not interfere in the absence of a showing of abuse of that discretion. The case comes to us for correction of errors, and not that we may exercise the pardoning power. Commutation of sentence does not belong to this department of government. We have carefully gone over the entire record and find no abuse of the discretion vested in the trial court."

Defendant pleaded not guilty at the first trial and the jury found him guilty. He changed his plea from that of not guilty to that of guilty. He was ably represented by counsel. A transcript of the testimony and exhibits offered in the first trial was submitted to the lower court and that court found him guilty of the crime of manslaughter. As this court has said on numerous occasions, a large discretion is vested in the trial court, and unless there is a showing of abuse of that discretion, this court will not interfere. Certainly no one could read this record and say that the lower court abused the discretion vested in him in returning the verdict it did return.

It therefore follows that the judgment and decree of the lower court must be, and it is hereby, affirmed.

PARSONS, C. J., and ALBERT, KINTZINGER, DONEGAN, HAMILTON, and ANDERSON, JJ., concur.