STATE OF IOWA, appellee, v. MAX BURNELL MARTIN, appellant.

## No. 47935.

(Reported in 55 N.W.2d 258)

OCTOBER 14, 1952.

Hobart E. Newton, of Stuart, for appellant.

Robert L. Larson, Attorney General, Glenn L. Gray, Assistant Attorney General, Claire H. Williamson, County Attorney, and W. E. Don Carlos, Special Assistant County Attorney, for appellee.

THOMPSON, J.—On March 9, 1951, the defendant was indicted by the grand jury of Adair County, the indictment being in these terms:

"THE GRAND JURORS of the County of Adair in the name and by the authority of the State of Iowa accuse Max Burnell Martin of the crime of FIRST DEGREE MURDER as defined in section 690.2 of the 1950 Code of Iowa and charge that the said Max Burnell Martin on or about the 19th day of January, A. D., 1951, in the County of Adair and State of Iowa did wilfully,

deliberately, feloniously, and with premeditation and malice aforethought, or while in the perpetration or attempt to perpetrate the rape of Kathryn Givan Schrader, or while in the perpetration or attempt to perpetrate the robbery of Kathryn Givan Schrader, murder the said Kathryn Givan Schrader, contrary to the provisions of Section 690.2 of the 1950 Code of the State of Iowa."

On March 28, 1951, the defendant was arraigned. Thereupon he entered a written plea of guilty, and since it is of importance in a proper consideration of this case we set it out in full herewith:

"Comes now the defendant, Max Burnell Martin, and respectfully states to the court:

"That he is 28 years of age and a resident of Adair County, Iowa; that he has lived in Adair County, Iowa, all of his life except for the period of time during which he served in the Armed Forces of the United States.

"That he has received a true copy of the indictment returned by the grand jury of Adair County, Iowa, in the above entitled cause charging him with the crime of MURDER IN THE FIRST DEGREE as defined in section 690.2 of the 1950 Code of Iowa, in that on or about the 19th day of January, 1951, he murdered one Kathryn Givan Schrader; that he is charged in his true name in said indictment; that he has been advised of his legal rights and that he is represented in the above cause by George D. Musmaker, an attorney at law of Greenfield, Adair County, Iowa; that he has been advised that on conviction on said indictment he may be punished with death or imprisonment for life at hard labor in the penitentiary.

"That without any promise of leniency or other inducements he hereby voluntarily enters his written plea of GUILTY to the crime charged in said indictment. That he knows this leaves nothing for the court to do but to pronounce sentence upon him, and he waives formal arraignment and asks the court to pronounce sentence upon him at once.

"Dated at Greenfield, Iowa, this 28th day of March, 1951.
"MAX BURNELL MARTIN."

The record shows that court convened at 2:55 p. m. on March 28. Defendant's counsel, at that time Mr. George D. Musmaker, of Greenfield, then said to the court: "I would like to have him take time to read this plea here." To this the court assented, and presently the written plea, signed by the defendant was filed. We assume from the foregoing that it was signed in the courtroom, after being scanned by the accused. It was then agreed by the court and counsel for the State and for defendant that judgment would be pronounced on March 29, 1951, at 9 a. m. Court adjourned at 3:05 p. m. on the 28th. The facts as to what transpired on March 29, when sentence and judgment imposing the death penalty upon the defendant were entered, are set out later in this opinion.

As shown by the indictment above, Kathryn Givan Schrader, twenty-five years of age, the mother of two small children, a young woman of high standing in the community, was killed at her farm home in Adair County on January 19, 1951. On January 20 the defendant was apprehended and accused of the crime. On that date he made a written confession, which he repeated in substance and in much more detail, in question-and-answer form, on January 22nd. He admitted killing Mrs. Schrader by shooting her twice with a .22 caliber rifle. The defendant had a previous criminal record, and if his own story is believed the killing was most cruel and wanton. Further details of the commission of the offense as shown by the two purported confessions of the defendant and by the testimony of other witnesses before the grand jury would be of no aid in the solution of the problems before us.

I. It must be conceded that neither the defendant nor anyone for him took any exceptions or made any objections in the trial court to the procedures by which he was convicted upon his plea of guilty and sentenced to death. If, therefore, we are to measure his rights upon this appeal by the technical rules which apply to civil cases, and which have been followed in many criminal causes, he has no case and there is nothing that we can do for him. But there are most cogent reasons why we should not apply these rules here.

Section 793.18, Code of 1950, says:

"If the appeal is taken by the defendant, the supreme court must examine the record, without regard to technical errors or defects which do not affect the substantial rights of the parties, and render such judgment on the record as the law demands; it may affirm, reverse, or modify the judgment, or render such judgment as the district court should have done, or order a new trial, or reduce the punishment, but cannot increase it."

We have applied it in many cases. See State v. Cox, 240 Iowa 248, 34 N.W.2d 616; State v. Barr, 123 Iowa 139, 98 N.W. 595; State v. Nine, 105 Iowa 131, 136, 74 N.W. 945; State v. McCormick, 27 Iowa 402; and State v. Brainard, 25 Iowa 572, 580. Many others might be cited. In State v. Cox, supra, at page 252, we quoted with approval from State v. Brainard, supra, this language:

" 'It is made the duty of this court to decide criminal appeals according to the very justice of the case as shown by the record, without regard to technical errors. It does not harmonize with the humane spirit of this statute to lay down the iron rule that the defendant must inevitably and in all cases be visited with the consequences of the omissions or errors of counsel.' "

It is generally held that in capital cases the appellate courts will disregard technical rules for the purpose of determining whether the defendant had a fair trial. It is said in 24 C. J. S., Criminal Law, section 1669, pages 270, 271: "* * * an exception to the general rule that questions not raised in the trial court will not be considered on appeal exists in case of material defects which are apparent on the face of the record and which are fundamental in their character, or which clearly show manifest injustice, especially in capital cases."

It is the manifest purpose of the statute above set out to guarantee that this court shall determine whether the accused had a fair and just trial under established rules of law, but without regard to technical defects or failures. Especially must this be true in cases where the defendant's life is in jeopardy. The most solemn duty devolving upon any court is the imposition of the death sentence, in a proper case. No human life should be taken by judicial order until every requirement of statutory

law and justice has been complied with. And the more cruel and revolting the crime of which the defendant stands accused, the stronger the popular feeling and public indignation, the more meticulous should the courts be in observing these rules, that no man may be convicted and executed because of the hue and cry raised against him, but only after a trial fair in every respect. The Florida Supreme Court, in Casey v. State, 116 Fla. 3, 8, 156 So. 282, 284, said:

"Under our form of government, a supreme value is attached to human life. The law rightly prescribes exacting and sometimes tedious requirements to deprive one of it. There is a sound reason and a pertinent history behind all these requirements and the fact that one whose life society is exacting, has committed a heinous crime, in no sense warrants any court in overlooking the law's mandate. If it may be overlooked in one case, it may be cast to windward in another and then it ceases to perform the function for which created."

Nor is it for us to say in this case, or in any case, that the defendant is obviously guilty of a heartless and wanton murder, and so deserves his punishment even though not imposed with strict observance of the requirements of law. It was well said in Reynolds v. State, 58 Neb. 49, 53, 78 N.W. 483, 485:

"It has been suggested, and is doubtless true, that in this case 'outraged Justice has laid her avenging lash on the back of one who honestly deserves the scourge;' but we cannot for that reason alone affirm the judgment. The jurisdiction of the courts is not co-ordinate with that of the mob."

II. Sections 690.4, 690.5, and 777.12, Code of 1950, are herewith set out:

"Upon the trial of an indictment for murder, the jury, if it finds the defendant guilty, must inquire, and by its verdict ascertain and determine the degree; *but if the defendant is convicted upon a plea of guilty, the court must, by the examination of witnesses, determine the degree,* and in either case must enter judgment and pass sentence accordingly." Section 690.4. (Italics supplied.)

"Upon the trial of an indictment for murder, the jury, if it finds the defendant guilty of murder in the first degree, must direct in its verdict whether the punishment shall be death or imprisonment for life at hard labor in the penitentiary, but if the defendant pleads guilty the court shall so direct, and in either case must enter judgment and pass sentence accordingly." Section 690.5.

"The plea of guilty can only be made in open court and by the defendant himself, in substantially the following form: 'The defendant pleads that he is guilty of the offense charged in the indictment', and shall be entered of record. The plea may be entered in vacation at the usual place of holding court in any county of the judicial district." Section 777.12.

■ An examination of the plea of guilty entered in this case shows that it was substantially in the form prescribed by section 777.12 above. The court held no hearing and examined no witnesses as prescribed by section 690.4, but having examined the minutes of testimony attached to the indictment, the purported confession of the defendant, the reports of psychiatrists who had examined him, and heard the statements of counsel, proceeded to sentence him as upon a conviction of first-degree murder. In this there was manifest error.

■ The court and counsel apparently were of the opinion that under the circumstances here, in view of the language of the plea, which they construed as a plea of guilty to murder in the first degree, no hearing was necessary. We think they were in error in such construction. While the plea recites that the defendant has received a copy of the indictment charging him with first-degree murder, and says "he voluntarily enters his written plea of GUILTY to the crime charged in said indictment", it must be kept in mind the crime charged in the indictment was several; in this case, not only murder in the first degree, but certainly murder in the second degree and manslaughter at least. We said in State v. English, 242 Iowa 248, 252, 46 N.W.2d 13, 15: "It is elemental that an information [or indictment] charges not only the major offense, but any lesser offenses necessarily included therein."

■ Section 777.12, above set out, provides the form of plea of guilty to be entered. It is the form followed in this case. The very purpose of section 690.4 is quite evidently to provide for a means by which the court, when a plea of guilty is entered in the statutory form to an indictment for murder, must determine the degree; and this mandatory requirement is not obviated by the fact that the indictment herein, instead of following the form permitted by section 773.34, unnecessarily included the words "first degree" in the charge.

Section 773.30 provides: "Any allegation unnecessary under existing law or under the provisions of this act [the short form of indictment act, of which section 773.34 above referred to is also a part] may, if contained in an indictment, be disregarded as surplusage." The allegation of first degree as related to the murder charge in the present indictment must clearly be considered as surplusage, and at least under the circumstances here the word "may" in section 773.30 should be read as "shall." The "first degree" part of the charge in the indictment was "an allegation unnecessary" under the provisions of the short form of indictment act, which in section 773.34 provides it shall be sufficient to charge murder by alleging "A. B. murdered C. D." Any other construction would nullify the provisions of section 690.4 whenever a plea of guilty to an indictment or information charging murder, with the surplus allegation "in the first degree", is entered, as in the case at bar. State v. Phillips and Brooks, 118 Iowa 660, 664, 665, 92 N.W. 876, 877, sets out the true rule, and aptly illustrates the error into which the trial court fell. In the Phillips case we said:

"There is, under our law, but one crime called murder. The so-called degrees of this offense do not constitute distinct crimes, but gradations of the same crime, devised for the purpose of permitting punishment to be varied according to the circumstances of greater or less enormity characterizing the criminal act."

The holding of the case is that a general indictment for murder is sufficient, and charges all degrees of the offense. Necessarily, therefore, any further specification, such as "in the first

degree" as here, is surplusage only, and a plea of guilty to the crime charged in the indictment is no more than a plea of guilty to murder, with the degree to be ascertained as provided in section 690.4. The lesser offenses were still included in the indictment, and if the case had been tried to a jury upon a plea of not guilty, the court, depending of course upon the nature of the evidence, might well have found it necessary to tell the jury that the indictment included and also charged the defendant with murder in the second degree and manslaughter. These were likewise "charged in the indictment", and the court should have heard evidence to determine the degree, under section 690.4.

The court and counsel seem to have relied at this point upon State v. Bruntlett, 240 Iowa 338, 36 N.W.2d 450, State v. Harper, 220 Iowa 515, 258 N.W. 886, and State v. Hortman, 122 Iowa 104, 97 N.W. 981. By so doing they were led into error. We have pointed out above that the plea of guilty is only to the offense charged in the indictment, which might be any of the two degrees of murder, or manslaughter. The language of each of the above cases, to the effect that no hearing was necessary, is dictum, because in each case a hearing was actually held and sufficient competent evidence introduced to determine the degree.

The opinion in the Harper case seems to hold that in cases where proof of premeditation and deliberation is required, as in the instant case, a hearing should be had and witnesses heard. State v. Harper, supra, page 519 of 220 Iowa. This is sound. But the writer of the opinion thought there is some conflict between the present sections 690.4 and 690.5, and that, the latter having been later enacted, there is shown an intent to change the law, and a plea of guilty to first-degree murder may be made and accepted by the court, leaving only the question of punishment. While, as we have pointed out, the holding in the Harper case is dictum, since a hearing was actually held, it is well to say that a majority of the court now disagree with the reasoning set out above. The real distinction between sections 690.4 and 690.5 is that the first provides the jury shall determine the degree of the crime, except upon a plea of guilty it shall be determined by the court by the examination of witnesses; while

the intent of the second statute, 690.5, is that in any and every murder trial the jury verdict must, if it determines the offense to be of the first degree, also direct the punishment; while if the court, upon a plea of guilty and after hearing as provided in 690.4, finds first-degree murder, it shall 'fix the punishment of life imprisonment or death. Section 690.4 provides for the method of determining the degree; section 690.5 for fixing the punishment when first-degree murder is found, either by the jury upon trial or by the court upon plea of guilty and hearing.

Dictum to the contrary of equal authority, and resting upon a firmer foundation, is found in State v. Grattan, 222 Iowa 172, 175, 268 N.W. 489, 490, where upon an indictment for first-degree murder the defendant pleaded "guilty of the offense charged in the indictment." This court said: " A hearing was held *as required* by the law of Iowa." (Italics supplied.) And in State v. Breeding, 220 Iowa 605, 607, 262 N.W. 467, 469, we said: "The defendant pleaded guilty to the crime of murder in the first degree. *It then became the court's duty to hear the evidence.*" (Italics supplied.) These statements express the law as it has always been thought to be until pronouncement of the dicta in the Bruntlett, Harper, and Hortman cases, supra. These dicta of course are not controlling here, and are expressly disapproved.

The provisions of section 690.4 are not unusual. Similar statutes are in effect in other jurisdictions. In 24 C. J. S., Criminal Law, section 1563b(1) at page 25, it is said:

"Under statutes in some jurisdictions, where accused pleads· guilty generally to an indictment which charges an offense of which he may be guilty in one of several degrees, the court must, before passing sentence, ascertain the degree, and for such purpose must ordinarily hear evidence."

In Casey v. State, supra, at page 8 of 116 Fla., page 284 of 156 So., the Florida Supreme Court reversed a conviction, sentence and judgment because of the failure of the trial court to take evidence to determine the degree of guilt under a statute much like ours. There, the plea seems to have been specifically to murder in the first degree, yet the court said: "In our judg-

ment, these statutes are mandatory and must be followed to substantial literalism."

Under a similar statute the Nebraska Supreme Court said a determination by the court that no hearing was required upon a plea of guilty of murder under an indictment charging first degree was erroneous, although holding it should have been raised by appeal rather than by an attack upon the jurisdiction of the trial court. Cole v. State, 105 Neb. 371, 180 N.W. 564. See also 15 Am. Jur., Criminal Law, section 519, pages 167, 168.

 Another procedural matter which the State thinks shows no hearing was necessary here—that in effect the defendant waived his right thereto—must be noted. On August 28, 1951, when defendant had procured different counsel and this appeal had been taken, the State filed a motion to correct the record. It was based upon a joint affidavit of the two prosecuting attorneys, which recited that upon March 28, 1951, the day before the defendant was to appear for sentence, they, with defendant's then attorney, discussed with the presiding judge the procedure to be followed. Defendant's counsel then said he had nothing to refute the testimony of witnesses as shown by the minutes of their testimony before the grand jury, or to contradict the exhibits then on file in the case; that he did not believe it was necessary for the State or himself to introduce any evidence, but he (presumably the court) could inform himself about the case and the defendant by going over the indictment, minutes of testimony and exhibits. It was so agreed. No claim is made that the defendant was present at this conference where his rights were so summarily determined; in fact the record fairly shows to the contrary. We have held that an agreement such as this cannot be established by the affidavits of opposing counsel. Hampton v. Burrell, 236 Iowa 79, 89, 17 N.W.2d 110, and cases cited. It is true that here, in sustaining the motion to correct, the court said the agreement was remembered by him substantially as alleged by the State, and so placed his ruling, in part at least, upon his own knowledge.

The question of whether the record should have been corrected is not important. If the defendant was entitled to a hearing upon the degree of the crime, his attorney, acting apart

from his presence and without his knowledge, could not waive it. It has been pointed out that his plea of guilty was not specifically to the crime of murder in the first degree, and if this is correct, then the waiver of hearing by his attorney would necessarily be either a plea of guilty to first-degree murder by the attorney for him, which is not permitted by statute, section 777.12, or a concession that the court might determine the degree and punishment solely upon the State's showing before the grand jury and the purported confession of the defendant. We think the provision that the court shall determine the degree by the examination of witnesses must perforce give the defendant some right to be heard, to offer evidence in mitigation of the offense and so in diminution of the punishment. It has been held that the court, for the purpose of this hearing, may advise himself in various ways, but that is not to say the defendant need not be given an opportunity to offer anything he deems material, or that his counsel can waive this most substantial right for him in his absence. It is said in 14 Am. Jur., Criminal Law, section 190, pages 899, 900, "The right to be present extends to every part of the trial proper. The defendant should be present * * * when evidence is introduced for the purpose of determining the amount of punishment to be imposed."

If this is true, it follows as a matter of course that his right to a hearing could not be waived during his absence. Indeed, we think that the duty placed upon the court by section 690.4, supra, is mandatory, and it cannot be avoided by any waiver, even by the defendant himself. We agree with the Florida Supreme Court, as quoted in State v. Casey, supra, that the statute must be followed "to substantial literalism." It is a duty imposed on the court, which must be performed in all cases where a plea of guilty to murder is entered.

If it be asked what avail a hearing on this point might have been to defendant, in view of his confession, we think the answer is clear. Since this is a capital case, when any substantial right of the defendant is transgressed prejudice will be presumed. He might have attempted to show that his confession, obtained at a time when he had not had the benefit of advice of counsel, was not voluntary; he might have tried to demonstrate his lack

of mental capacity; he might, in fact, have made it evident to the court that his plea of guilty was obtained under considerable pressure. Both statutory law and the broad principles of justice demanded he be given the right to show what he could, and the court's failure to accord it to him was manifest error. Applicable here is the language of this court in State v. Clouser, 72 Iowa 302, 33 N.W. 686, quoted with approval in State v. Voelpel, 213 Iowa 702, 705, 239 N.W. 677, 678:

" 'The courts are often subjected to criticism for disturbing verdicts in criminal causes upon what are denominated technical grounds; but the legislature has been careful to prescribe the rules which must govern the trial of such causes, and it is the province and duty of the courts to administer the law as it is written. If one express provision of the statute may be disregarded in a particular case, others may be violated in other cases; and there would not only be uncertainty in the administration of the law, but all rights of persons and property would be put in jeopardy.' "

■ III. The defendant assigns as one of the errors relied upon for reversal that the record does not "show the elements of the crime of first-degree murder." This assignment is without merit. Other errors assigned concern matters not likely to arise upon another trial. We think it proper, however, to say it is always advisable for the trial court to inquire of the defendant and to make sure that his plea is entered voluntarily and with full knowledge and understanding; and, of course, care should be taken to comply with section 789.6, which grants the defendant the right of allocution, to say if he has any reason why sentence should not be pronounced.

For the reasons set out in Division II the sentence and judgment are reversed.—Reversed.

MULRONEY, C. J., and SMITH, OLIVER, BLISS, and HAYS, JJ., concur.

GARFIELD, WENNERSTRUM and MANTZ, JJ., dissent.

GARFIELD, J. (dissenting)—I respectfully dissent.

I disagree with the majority holding that the State cannot

charge a defendant with first-degree murder but only with murder, that allegations of an indictment the murder was in the first degree must be disregarded as surplusage, that the "permissible forms" which Code section 773.34 says "may be used" in an indictment are exclusive and must be used.

No authority the majority cites supports its position and I think authority for it is not to be found. State v. Phillips and Brooks, 118 Iowa 660, 92 N.W. 876, cited by the majority, does not sustain its view but is contrary to it. The cited case holds the indictment *properly charged first-degree murder* and states (pages 665, 666 of 118 Iowa):

"The objection that the indictment does not state facts constituting murder in the first degree is not well taken.

"* * * it would be difficult to charge murder in the first degree in apter language than is here employed. Murder in the first degree is the willful, deliberate and premeditated killing of a human being with malice aforethought. Each of the elements of this definition is contained in the charge made against the defendants * * *.

"* * * There was no error, therefore, in the holding of the district court that the indictment charged the crime of murder in the first degree."

The majority's holding "The 'first degree' part of the charge in the indictment" must be discarded as surplusage also logically requires discarding other proper and pertinent allegations of the indictment (quoted in the majority opinion) that the crime charged is defined in section 690.2 (*which refers solely to first-degree murder*), allegations as to the manner of committing the crime and that it is contrary to the provisions of section 690.2. These allegations are all made proper by section 773.3. State v. Phillips and Brooks, supra, at page 665 of 118 Iowa, says: "* * * we must look to the facts set forth in the body of the instrument to ascertain the degree of the crime for which the accused may lawfully be placed upon trial."

A great many decisions in our reports, both before and after the short-form indictment law, show the indictment was for

first-degree murder. I think it will be a shock to the profession to learn this may not be done.

Under the majority's reasoning the State may not charge a defendant with robbery with aggravation as defined in section 711.2 by alleging he did something contrary to the provisions of that section. The only crime that could be charged would be robbery and the indictment could merely state "A.B. robbed C.D." because that is the permissible form which section 773.34 says "may be used." Numerous other examples of the far-reaching effect of the majority opinion might be mentioned.

The majority holding, for which no authority is cited, that "may" in Code section 773.30 must be read as "shall" is contrary to State v. Machovec, 236 Iowa 377, 381, 382, 17 N.W.2d 843, although that case involves what is now section 777.15, rather than 773.30.

I also disagree with the majority's holding that a plea of guilty to a charge of first-degree murder is no more than a plea of guilty to murder or manslaughter and that the trial court is bound to hear evidence to determine whether a defendant, represented by experienced counsel chosen by his parents and himself, is guilty of first-degree murder when he admits he is guilty of such degree.

This precise question was decided in State v. Harper, 220 Iowa 515, 258 N.W. 886, where the charge was first-degree murder accomplished by means of poisoning. Murder "perpetrated by means of poison" is only one kind of the "willful, deliberate, and premeditated killing" section 690.2 defines as first-degree murder. This is plain from the language of 690.2 itself: "All murder which is perpetrated by means of poison, or lying in wait, *or any other kind* of willful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate any arson, rape, robbery, mayhem, or burglary, is murder in the first degree * * *." (Italics added.)

In the Harper case the trial court held a hearing but incompetent, unsworn and hearsay evidence was received. Upon appeal it was contended the admission of such evidence was error and it did not appear defendant was guilty of murder in the first degree. We answered the contention by holding the necessity

for any hearing was obviated by defendant's plea of guilty to first-degree murder and it was therefore unnecessary to consider the claimed errors committed at the hearing. The opinion plainly recognizes the question for decision in this language (page 518 of 220 Iowa) : "We are thus called upon to determine the nature of the hearing which the court is required to conduct in a case of this kind and the character and amount of evidence necessary to support a sentence."

The Harper opinion then carefully considers what is now section 690.4 (then section 12913, Code, 1935), quoted by the majority, and holds with regard to it (page 520 of 220 Iowa) : "In other words, while the statute requires the determination of the degree by the jury in the case of a plea of not guilty and a determination of the degree by the court in case there is a plea of guilty, *the statute finds no proper application in any case except in a case where the question of the degree is in issue.* * * * We do not believe that in the instant case there was any question of degree to be determined. *That question was effectively determined by the information and the plea.* Any attempt by the court to determine the degree from the examination of witnesses in such a case would·be an idle ceremony." (Italics added.)

State v. Harper then goes on to consider what is now section 690.5 (then section 12914, Code, 1935), also set out by the majority, quotes at length from State v. Hortman, 122 Iowa 104, 108, 97 N.W. 981, 982 (decided in 1904), and holds with regard to 690.5 (page 522 of 220 Iowa) : *"This much, however, seems clear*; that the latter enactment deals exclusively with first-degree murder; *that it authorizes a plea of guilty to first-degree murder;* that it provides that where such a plea is entered, the court has only to determine whether the penalty should be death or life imprisonment; *and that there is no requirement in the statute in such cases as to how the court shall inform itself so as to determine between the two penalties provided."* (Italics added.)

It is obvious the pronouncements above-quoted are not dicta, as the majority contends, merely because in the Harper case a hearing was held. They are no more dicta than is a holding that

errors upon the trial of which a plaintiff complains upon appeal are not prejudicial because defendant was entitled to a directed verdict in any event. Indeed such a decision bears a close analogy to that in State v. Harper.

More obviously without merit is the majority's attempt to discredit the Harper opinion as expressing only the views of its writer. As the majority well knows, those views are the views of this court speaking through the writer of the opinion.

State v. Harper, supra, is followed and reaffirmed in the concurring opinion of Justice Hays in State v. Bruntlett, 240 Iowa 338, 348, 36 N.W.2d 450, 456, concurred in by five other justices. Bruntlett pleaded guilty to first-degree murder and his death sentence was affirmed. According to the court's opinion in the Bruntlett case (at page 339 of 240 Iowa): "The court thereafter heard evidence *for the purpose of ascertaining what the punishment should be.*" (Italics added.) Apparently such hearing was not held for the purpose of determining the degree of murder committed.

The concurring opinion of the six justices speaking through Justice Hays in the Bruntlett case states (page 348 of 240 Iowa, page 456 of 36 N.W.2d): "The indictment specifically charges first-degree murder, under section 690.2, Code of 1946. Appellant, after being fully advised, entered a plea of guilty thereto. * * * Under such a plea no hearing is necessary as section 690.4, Code of 1946 is not applicable. State v. Harper, 220 Iowa 515, 258 N.W. 886."

It may also be noted that the dissenting opinion of Justice Bliss in State v. Bruntlett, joined in by two other justices, cites State v. Hortman, 122 Iowa 104, 109, 97 N.W. 981, and State v. Harper, 220 Iowa 515, 523, 258 N.W. 886, for the proposition "that the trial court may act upon any information from any source which satisfies its conscience and sense of duty * * *." (Page 378 of 240 Iowa, page 472 of 36 N.W.2d.)

In view of the Harper and Bruntlett cases, not to mention State v. Hortman, all supra, it is not surprising that defendant's present counsel concedes in argument "the law in Iowa now is that upon a plea of guilty to murder in the first degree, no hearing to determine the degree need be had."

· What is conceded to be dicta in State v. Grattan, 222 Iowa 172, 175, 268 N.W. 489, and State v. Breeding, 220 Iowa 605, 607, 262 N.W. 467, quoted by the majority, are casual statements without the citation of supporting authority. They are entitled to much less weight than the more carefully considered pronouncements in the Hortman, Harper and Bruntlett cases which are supported by authority. The Hortman case has stood for nearly forty-nine years. I see no occasion to overrule these pronouncements.

The majority quotes a statement from 24 C. J. S., Criminal Law, section 1563b(1), page 25, that is not applicable here. The portion of the same text (page 26) that does apply, which the majority should have quoted, is: "* * * but, where accused pleads guilty to a certain degree of an offense, the question of degree is not for the determination of the court, and no substantial right is invaded by the court's failure to conduct a hearing for the purpose of such determination."

State v. Harper, supra, is one of the cases cited in support of the text just quoted. A number of additional citations are found in the 1952 cumulative pocket part. Among them are State v. Bruntlett, supra, 240 Iowa 338, 36 N.W.2d 450, and People v. Grillo, 319 Mich. 586, 588, 30 N.W.2d 284, 285, where the statute was much like our section 690.4. There Grillo, charged with murder, "entered his plea of guilty to second-degree murder." The opinion states, "nor did the trial judge examine witnesses 'to determine the degree of the crime' before rendering judgment. See * * * Stat. Ann., section 28.550." Defendant was sentenced to life imprisonment and upon appeal complained of the "failure to take the testimony of witnesses as to the degree of the crime."

The court holds (pages 589, 590 of 319 Mich., page 286 of 30 N.W.2d):

"However, when Grillo pleaded guilty to second-degree murder, and it was determined that his plea was made freely and without undue influence, nothing else remained to be determined. There was no necessity to examine witnesses in order to determine the degree of his crime.

"The rule applicable to such a situation is stated in 24

C. J. S., Criminal Law, section 1563, as follows: 'Under statutes in some jurisdictions, * * * but, where accused pleads guilty to a certain degree of an offense, the question of degree is not for the determination of the court, and no substantial right is invaded by the court's failure to conduct a hearing for the purpose of such determination.' State v. Harper, 220 Iowa 515, 258 N.W. 886; Brandon v. Webb, 23 Wash.2d 155, 160 P.2d 529; Ex parte Haase, 5 Cal. App. 541, 90 P. 946.

"Appellant further argues that notwithstanding the foregoing, such examination is necessary because manslaughter is a degree of the crime of murder. * * *

"The statute, supra, on which appellant relies, does not require a determination of whether the accused is guilty of manslaughter. [Citations.]"

The majority cites Casey v. State, 116 Fla. 3, 156 So. 282, and Cole v. State, 105 Neb. 371, 180 N.W. 564. Casey v. State and earlier reviews of Cole v. State (In re Cole, 103 Neb. 802, 807, 174 N.W. 509, 848) were cited and considered in State v. Harper, supra, at pages 518, 519 of 220 Iowa. Nothing in 15 Am. Jur., Criminal Law, section 519, supports the majority opinion.

I must also express disagreement with the majority's statement by way of dictum, unsupported by authority, "that the duty placed upon the court by section 690.4, supra, is mandatory, *and it cannot be avoided by any waiver, even by the defendant himself.*" (Italics added.)

14 Am. Jur., Criminal Law, section 119, states, "In fact, the trend of modern authority is in favor of the doctrine that a party in a criminal case may waive irregularities and rights, whether constitutional or statutory, very much the same as in a civil case." Id., section 188, says, "The right to be confronted by witnesses against him is a personal privilege of which every defendant may avail himself, or which he may waive, as he may see fit."

State v. Moore, 217 Iowa 872, 878–880, 251 N.W. 737, is in line with the above quotations from American Jurisprudence. The Moore case holds the right to a separate trial may be waived and cites with approval State v. Olds, 106 Iowa 110, 114, 76

1342

N.W. 644, where it is held the right to be confronted by witnesses may be waived and their written testimony received.

People v. Pennington, 267 Ill. 45, 49, 107 N.E. 871, 872, holds: "That part of section 4 of division 13 of the Criminal Code making it the duty of the court to examine witnesses as to the aggravation and mitigation of the offense in cases where the party pleads guilty is mandatory, and it is necessary for the court to make such examination when requested or desired either on the part of the People or of the defendant. This is a privilege which may be waived by the parties and some other method of supplying the court with the necessary information be substituted in its stead." This holding is quoted with approval in People v. Popescue, 345 Ill. 142, 151, 177 N.E. 739, 743, 77 A. L. R. 1199, 1206, which affirms a death sentence for murder.

Even under the majority's construction of sections 690.4 and 690.5 I see no reason why this defendant, represented as he was by experienced counsel selected by himself and his parents, could not have consented that the degree of the crime be determined by the court from an examination of the indictment, minutes of the testimony thereto attached and the exhibits. In effect this would merely be a waiver of the right to be confronted by witnesses.

WENNERSTRUM and MANTZ, JJ., join in this dissent.